ROBERTS and others, Respondents, vs. GERBER and others, imp., Appellants.

*February 13—June 22, 1925.*

*Covenants: Agreement not to use lake property for "club" purposes: Breach: Subdivision into lots: Purchasers with common privileges: Depositions: Use at subsequent trial: Opportunity of re-examination.*

1. The subdivision of land with lake frontage, under which purchasers of lots were to have common or community rights to certain easements and privileges, is a violation of a written agreement containing covenants which had attached to the land prohibiting use of the property for "club" purposes,—a "club" meaning an association formed to combine the operations of persons interested in the promotion or prosecution of some object, and, as used in the agreement here, it includes clubs of all kinds. Language in *Boyden v. Roberts,* 131 Wis. 659, where the identical agreement was construed, is indorsed, and is controlling here.  p. 289.

2. Depositions taken in a former action between predecessors in title were admissible under sec. 4141*a,* Stats., in a subsequent action involving the same issue, where the offer of the depositions was against those who, when they were taken, had the opportunity of direct examination,—the latter being a substantial equivalent of the cross-examination referred to in sec. 4141*a.*  p. 289.

APPEAL from a judgment of the circuit court for Walworth county: E. B. BELDEN, Circuit Judge. *Affirmed.*

In 1891 one John Johnston, Jr., of Chicago, purchased a tract of about 106 acres with a considerable frontage on Lake Geneva in said county. Such tract was thereafter designated as Forest Glen.

In October, 1892, the said Johnston conveyed to one Weiss, also of Chicago, about thirteen acres of said Forest Glen, with a lake frontage of about 700 feet, and as part of the transaction between them they mutually executed a written agreement which, after reciting Johnston's purchase,

ownership, and intention to convey to Weiss (which was done by separate deed), contained the following:

"Whereas, it has heretofore been and is now agreed and understood between said parties that the character of all of said property known as Forest Glen as first-class residence property shall be preserved by the present owners and future purchasers of the same:

"Therefore, in consideration of one dollar ($1) by each of said parties paid to the other, the receipt whereof is hereby acknowledged, it is hereby covenanted and agreed between said parties, for themselves and their respective heirs, executors, administrators, and assigns, that no part or portion of said Forest Glen property hereinbefore mentioned shall at any time be occupied, sold, or used by them, or either of them, or by either of their heirs, executors, administrators, or assigns, for hotel, club, or camping purposes, or for any reformatory, charitable, or penal institution.

"This agreement shall be binding upon the respective heirs, executors, administrators, and assigns of the parties hereto, and shall constitute a covenant running with the land.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year above written."

Such agreement was duly recorded with the register of deeds of said county November 7, 1892. Weiss erected an expensive summer residence at a cost of about $60,000, and in September, 1899, sold to one Uihlein, who thereafter platted this with other portions of Forest Glen. The deed to Uihlein recited that it was subject to the said agreement. The abstracts afterwards furnished to respective purchasers of portions of said Forest Glen recited said agreement. The plaintiffs are present owners of part of said Forest Glen, with respective lake frontages of 100 feet or more and expensive buildings. In July, 1922, the defendant *Winfred D. Gerber* purchased for $7,650 a portion of said Forest Glen designated as lot three (3) in said Uihlein subdivision and having a frontage of 153 feet on the lake with a depth of about 1,080 feet,

At the time of his purchase he learned of the existence and terms of the said agreement. Thereafter and before building he was also notified by two of the plaintiffs herein of said agreement, and by one that a subdividing, as was being proposed then by *Gerber,* into a number of small residence lots would be considered on the part of the other owners as a violation of the conditions of the said agreement, and substantially the same information was given to the defendants purchasing from *Gerber.* *Gerber* thereafter platted lot 3 into about thirty-two lots, all accessible by a common road lengthwise to the public highway at the end or the lot, and also accessible by a lane which ran across all the lake-shore lots in Forest Glen parallel with and about 350 feet from the lake.

The form of contract between *Gerber* and his prospective purchasers provided that any deed to be executed by *Gerber* as vendor should contain, in addition to the usual covenants, a restriction which runs with the land which is in effect that the property to be conveyed under such contract shall be used for residence purposes or such other purposes as said restrictions may permit. *Gerber* was, without expense to the purchasers, among other things, to clear, grade, and form walks leading from all lots to the lake shore, to construct suitable and appropriate steps in paths where needed, and to grade and plan the portions designated upon the plat (a copy whereof to be attached to each conveyance) as a private park; to furnish and install drain pipes for surface sewerage; to provide a water supply under pressure for domestic purposes to be furnished in the public park or lane in front of lots, connections to be made by the purchasers, the expenses of operating the water supply to be paid either by the owners or occupants of the lots or the users of water as and in a manner to be agreed upon; he was also to provide and erect a substantial pier eight feet wide by one hundred feet long and a suitable platform for the landing of rowboats and canoes. A strip along the entire shore line was

set aside for common use. It was further agreed that the owners and occupants of any and all lots in said subdivision shall have the right in common to use the lanes, paths, parks, beaches, with the ingress and egress to each lot thus provided, and that from the time the improvements so described shall have been completed the cost of operation and maintenance of such improvements shall be paid by the owners of the lots as and in the manner which may thereafter be agreed upon by a majority of the owners of the occupied lots. It was provided that no garage should be placed upon the individual lots and no residence constructed thereon costing less than $2,000, and that the building and premises shall always be maintained in a condition conforming with that of the surrounding property. Along the private lane above described was a space set aside for parking automobiles or the erection of a garage, space in which was to be sold or rented to lotowners. There were ten lots between the private lane and the small park upon the lake front on which residences could be built, each fifty-five feet deep with a fifty-foot frontage on the center path. The lots on both sides of the common road to the public highway were platted to be about fifty by fifty-five feet each. A strip about 285 feet long and fifty to seventy-eight feet wide was dedicated for common park purposes and upon which it was proposed to erect the pump house and the reservoir.

Defendant *Gerber* erected for his own use on one of the lots near the lake a dwelling house, and sold to three others, who also so erected dwelling houses in the spring or summer of 1923 at costs running from $3,000 to $4,500 (the then cost of building being about three times that in 1892).

This action was commenced in July, 1923, to prevent the defendant *Gerber* from further carrying out his proposed plan for disposing of said property and to compel the removal therefrom of the dwellings already erected, all because in alleged violation of the aforesaid Johnston-Weiss agreement.

The trial court found as facts that the scheme of *Gerber* for the sale and improvement of said lot 3 was typical of the camps and clubs existing on Lake Geneva at the time of the Johnston-Weiss agreement and in the minds of the parties to said agreement, and is inconsistent with the preservation of Forest Glen as first-class residence property, and constitutes a violation of said agreement. That plaintiffs purchased their respective holdings in Forest Glen in reliance upon such agreement and expended large sums of money in the erection of expensive, high-class summer residences upon their respective premises. That if defendant *Gerber's* plan be continued, the value and desirability of plaintiffs' property will be materially depreciated. That plaintiffs have no adequate remedy at law.

Judgment was directed for plaintiffs, and defendants appeal.

For the appellants there were briefs by *Charles E. Lyon* of Elkhorn and *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *Otto A. Oestreich.*

For the respondents there was a brief by *Simmons, Walker & Wratten* of Racine, attorneys, and *Franklin J. Tyrrell* of Lake Geneva, of counsel, and oral argument by *John B. Simmons.*

The following opinion was filed March 10, 1925:

ESCHWEILER, J. The trial court held that the plan proposed by the defendant *Gerber* in the laying out and disposing of lot 3 was a violation of the letter and spirit of the restrictive covenants which became attached to the land by the agreement of Johnston and Weiss in 1892, set forth in the foregoing statement of facts, and of which covenants and conditions defendant *Gerber* and those purchasing from him all had both constructive and actual notice prior to their starting to build their respective residences. He also in effect held that *Gerber's* plan of providing for and permitting the erection of twenty-five or more individual dwellings, each owner or user of such residence acquiring a common or

community interest in the improvements *Gerber* was to place upon the same in the way of drives, parks, water and sewerage facilities, pier and landing platform, bathing and boating beach, together with the obligations to be assumed by the respective purchasers of such lots to keep and maintain such improvements thereafter at common expense and in a manner to be determined by the voice and vote of the majority of such owners or users, was a dedication of the property to a club purpose within the fair intent and meaning of that term as used in the said agreement.

In 1906 the then owner of this identical lot 3, Mr. Uihlein of Chicago, who then owned other portions of Forest Glen, planned with others associated with him to erect upon this lot 3 a club house with a substantial pier on the lake front for a boat landing in connection with a golf course which had been laid out upon other portions of Forest Glen. It was contended by other owners of lake frontage in Forest Glen that such proposed use would be a violation of the Johnston-Weiss agreement and an action was then brought in the court below by and between several owners of such lake frontage in Forest Glen to have such contention settled. It was there determined that such proposed use was a clear violation of the restrictive covenants contained in the agreement of 1892, and such proposed use of lot 3 was permanently enjoined. On appeal to this court a full discussion of the facts there involved and consideration of the 1892 agreement was had and the judgment of the circuit court affirmed. *Boyden v. Roberts,* 131 Wis. 659, 111 N. W. 701.

We do not deem it necessary to repeat at any length what was there declared to be the nature and effect of this agreement other than to indorse what was there said (p. 672) that the word "club" as found in the agreement is used in its most comprehensive sense and that "the restriction includes clubs of all kinds" (p. 673).

We are confronted, therefore, on this appeal with a former decision of this court not only upon the general proposition

here involved as to the binding effect of such restrictive covenants upon all subsequent purchasers with notice thereof, but with a decision passing upon the identical agreement and its covenants here presented and where all the parties in the former action are in person or by privity in title parties herein.

It is earnestly urged by respondents under the well established doctrine, which we fully recognize, that covenants undertaking to restrict the future use to be made of real estate are not to be favored, that by no proper or reasonable construction to be given to the word "club" can the proposed plan of defendant *Gerber* be included, and that the club house there proposed to be built and the building of which was enjoined in the *Boyden v. Roberts Case, supra,* was so manifestly different from the plan here before us that the former decision does not here control.

In *Boyden v. Roberts* the definition by Webster of the word "club" is quoted. To that definition may be added approved definitions given in the "New English Dictionary" by Sir James Murray, vol. 2, p. 534, as being, "III. A combination or association;" and again, "14. An association formed to combine the operations of persons interested in the promotion or prosecution of some object."

It seems very plain that it would be hopeless on the part of the defendant *Gerber* to expect to dispose of this summer resort property in fifty-five by fifty foot lots to twenty-five or more individual purchasers if they are to have no common or community rights to lake frontage, bathing and boating privileges, and no common water supply. Evidently that which defendant *Gerber* by his proposed plan offers to prospective purchasers is the valuable common, community, or club right which each purchaser is to enjoy with all the others in that which is of the greatest value to summer resort property, namely, the lake frontage. To give individual and exclusive water-frontage rights in this strip of 153 feet to any but a much more limited number of purchasers than

under the present plan, would of course be impracticable if not impossible. By becoming a purchaser from *Gerber* under the agreement proposed by him, each purchaser thereby enters into a combination or association and joins in a common undertaking to carry out, for a common purpose, a plan whereby the extremely valuable advantage of summer resort lake frontage may be obtained for the number in association or combination, which, as individuals, it would be impossible for them to obtain. By such purchase they become associates in a common or community or club enterprise of keeping up, by common expense and pursuant to the voice of the majority, the very things that make such a purchase desirable and valuable.

We are therefore compelled to the conclusion that under the former holding of this court as to this very agreement and under a reasonable, necessary, and proper construction to be given to the terms of such agreement, in connection with the undisputed facts disclosed in this record, a similar conclusion must be reached here as to the proposition involved in the *Gerber* plan as was reached as to the club house and pier involved in *Boyden v. Roberts, supra.*

Complaint is made by appellants of the receiving in evidence, over their objection, of depositions of Johnston and Weiss, parties to the 1892 agreement, taken for use in the trial of *Boyden v. Roberts*. At the time they were taken, however, they were taken and used on behalf of those who, in that lawsuit, were taking an opposite view as to the construction to be given to the said agreement from that taken by the plaintiffs in this action. There they were taken in support of the contention that the club house and pier were not excluded by the term "club" in the agreement. Here they are offered on behalf of the contention that the *Gerber* plan is within the meaning of the term "club" and therefore in violation of the agreement. The court below, however, determined the case without consideration of such depositions, and we do likewise.

The question, therefore, whether such depositions ought to have been received and considered is not here of any material importance. We see no reason, however, why such depositions were not properly received under the provisions of sec. 4141*a*, Stats., as construed in *Illinois Steel Co. v. Muza,* 164 Wis. 247, 159 N. W. 908, as well as under general well recognized principles. Though such statute provides that in certain situations the testimony of a deceased witness or one absent from the state may be admitted in retrials or subsequent proceedings where the issue is substantially the same and where the party against whom it is offered shall have had an opportunity to cross-examine, yet here the present offer is as against those who, when the depositions were taken, had the opportunity of direct examination—a substantial equivalent. See, also, 22 Corp. Jur. 427; *Radclyffe v. Barton,* 161 Mass. 327, 329, 37 N. E. 373; *Yale v. Comstock,* 112 Mass. 267, 268.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 22, 1925.