MUELLER, Respondent, vs. SCHIER and wife, Appellants.

*October 23, 1925—February 9, 1926.*

*Covenants: Building restrictions: Constructive notice: Prior re-
corded deeds: General scheme of development: Who may en-
join violation: Waiver and estoppel: Land conveyed for
highways: Deeds: Construction: Porch encroaching on build-
ing line.*

1. The defendants had constructive notice of and are bound by
   deeds recorded and in their chain of title, which in plain
   language stated certain building restrictions, although the
   immediate deed to defendants did not mention any of the re-
   strictions.   p. 77.
2. A finding of the court that plaintiff, the owner of a lot subject
   to building restrictions, was not estopped to enjoin the viola-
   tion of a restriction by the defendants, adjoining lotowners, is
   sustained where plaintiff testified that at the time the porch
   constituting the violation was being built she was out of town
   and at first supposed that defendants were constructing a ter-
   race and not a porch, but on discovering it was a porch she
   consulted her attorney in regard to the matter.   p. 77.
3. Deviations from a building line as fixed by the restrictive
   covenants do not indicate an abandonment of such line where
   the deviations were few in number, were very slight. and
   were unknown to the property owner seeking to enjoin a clear
   violation.   p. 78.
4. Admissions in defendants' answer as to the general scheme of
   development of a tract of land for residential purposes dis-
   pensed with the necessity of introducing in evidence deeds
   showing such scheme.   p. 79.
5. In the construction of deeds the intention of the parties is to
   be ascertained by a consideration of all the provisions of the
   deed as well as the situation of the parties, and then effect
   should be given to such intention if practicable, when it is not
   contrary to law.   p. 80.
6. The language in which the deed is expressed controls the con-
   struction, but consideration can be given to the circumstances
   leading up to its execution, with the object always in view of
   interpreting the language in such a way as to effectuate the
   intention which the parties may be presumed to have had in
   the use of the words, whenever such interpretation can be
   accomplished without straining the language beyond its fair
   import.   p. 80.

Mueller v. Schier, 189 Wis. 70.

7. A deed from the common grantor and predecessors of the instant parties and many other owners of lots in a tract sold under a scheme for developing it for residential purposes which quitclaimed to a city a certain 100-foot strip for "highway purposes," and another deed by the common grantor dedicating and quitclaiming to the city an easement in such strip to hold it for street and boulevard purposes, are not inconsistent with the intent of the common grantor to convey and dedicate to various grantees the 100-foot strip for a park, driveway, and walk in common with all the owners of lands abutting on the parkway, "the same to remain . . . as a private park containing a common carriage drive and walk. . . ." p. 80.

8. The conveyance to the city for the purposes of a highway granted to it only an easement, the abutting owners remaining owners to the center of the street, having all the rights conferred by sec. 80.47, Stats., subject to the easement; sec. 3a, art. XI, Const., as amended, having no application.   p. 81.

9. The right of a lotowner to insist on the observance by an adjoining lotowner of uniformity in a building line created by covenants in the deeds to various grantees is not lost or abandoned by the failure of the lotowner to protest or to engage in lawsuits on account of unimportant deviations made in another block.   p. 82.

10. While restrictive covenants are not favored in the law, and doubts as to their construction will be resolved in favor of natural rights and against the restrictions, nevertheless building restrictions, when their intent is plainly shown in the deeds to be construed, will be enforced in equity unless the circumstances are such that enforcement would be inequitable. p. 82.

11. A porch projecting nine feet beyond the building line created by a covenant so as to obstruct the light and air of plaintiff, an adjoining lotowner, and spoil the uniformity of the building line, is an encroachment damaging plaintiff which he was entitled to enjoin.   p. 83.

APPEAL from a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge.   *Affirmed.*

This is an appeal by the defendants from a judgment rendered by the circuit court for Milwaukee county granting a mandatory injunction requiring the defendants to remove a porch claimed by the plaintiff to extend over on restricted

land and restraining the defendants from constructing or maintaining a porch within the restricted area, being within twenty-five feet of the lot line. The trial court found that the Matthieson Land Company was a corporation and acquired title by various purchases before November 18, 1914, of a tract of land now in the city of Milwaukee, embracing the premises now owned by the plaintiff and the defendants; that said company bought the land in question for the purpose of selling the same in lots subject to restrictions intended to be imposed on all the lots, which should be consistent with a general scheme of development, and they were intended to be for the benefit of all the lots intended to be sold and in pursuance of a general scheme for preserving the property as first-class residence property by future purchasers and their grantees; that in pursuance of such general scheme and to induce purchasers to buy lots, the land company conveyed a large number of lots in said tract to various purchasers, and in the deed executed to each inserted six covenants: "First. No building shall be erected or maintained or moved on any part of said land which extends nearer the parkway hereinafter mentioned than twenty-five feet." The deeds contained other covenants relating to the erection of fences, prohibiting the use of the land for certain business purposes (specifying them), the erection of flats or apartment houses, and providing that no house should be erected costing less than $4,000. In the sixth covenant it was provided that the covenants of restriction should continue in force until abolished "by a vote of the owners of at least three fourths of the frontage abutting upon said parkway, and shall in no wise be abolished or violated for a space of at least fifty years." It was further provided that the restrictions should be deemed covenants running with the land and enforceable by lotowners by injunction; that the entire tract should be preserved as a secluded, high-grade residence district. Each deed contained

a covenant by the land company that it would grant and dedicate to the grantee and his heirs and assigns and to all others, their heirs and assigns, who should own and purchase land abutting thereon, a tract therein described 1,850 and 77-100 feet in length and 100 feet in width, and the land company, in compliance with this covenant, executed and delivered on November 15, 1916, a dedication deed in accordance with said covenant, which was duly recorded. On the 23d of May, 1910, the land company conveyed to one Frank Specht a parcel of land to which the defendants afterwards acquired title, being the land now owned by them. In this conveyance to Specht it was expressly covenanted as part of the terms of the purchase that said six covenants should form a part of the purchase agreement.

It was further found that on February 1, 1911, the land company conveyed a certain tract to one Joseph Dierbeck and his wife, through whom the plaintiff afterward acquired title to the premises now owned by her. The conveyance to Dierbeck also contained six covenants substantially like those contained in the conveyance to Specht, but in the first restriction the following clause was added: "This clause shall be interpreted to include porches and every permanent erection which will obstruct view in any degree." The premises purchased and owned by the plaintiff adjoin those owned by the defendants, and the defendants' residence is on the corner of Fifty-third street and Pabst avenue, and the plaintiff's residence is the next one north of the defendants' building, with one unimproved ordinary lot between the two residences.

It was further found that the land company, while still owning certain portions of land abutting upon the parkway, with other owners, conveyed an easement to the city of Milwaukee for street and boulevard purposes only, in a certain tract of land "100 feet wide which before and after the conveyance of said easement to the city was and still

remains divided as follows: a parkway thirty-four feet wide on each side of the street between the lot line and curb line of street, which said street is thirty-two feet wide from curb line to curb line, and that each parkway consists of wide grass plots ornamented with trees, creating a beautiful appearance, and in the center of each parkway is a walk six feet wide, the whole making an unusually wide and very attractive street, consistent with a first-class residence district, and that this was done in harmony with the original scheme and in furtherance and continuance and preservation of the same."

The defendants and their predecessors purchased their lots upon the footing that said restrictions were to inure to the benefit of the other lots included in the general scheme as well as the lots which were retained by the common grantor of the land company. The plaintiff, relying on the restrictive covenants, erected a costly home and built the front line of their home in accordance with the first restrictive covenant above named. All the residences in the restricted neighborhood are bungalows of considerable cost.

The trial court also found that the defendants have constructed "two brick pillars upon a concrete base about six feet apart and nine and one-half feet west of the west line of the building, which said brick pillars are twenty-five inches square and extend almost to the height of the building and are connected with each other by a substantial brick arch and that said brick pillars are so shaped as to support a substantial roof and the house is so built as to make provision for a substantial and solid fastening of said roof onto the front part of the house. That said roof is not yet completed, but that said defendants will complete said roof unless restrained permanently by judgment of this court, and connect the same permanently, substantially, and solidly with said pillars, and that in addition to said two brick pillars said defendants have constructed and are constructing

two brick pilasters directly connected with and forming a
part of the front of the building, and extending each about
one foot west beyond the building line and within twenty-
four feet of the lot line or the east line of the parkway, and
that the same are connected with said pillars by two sub-
stantial brick arches, and that in addition said defendants
have erected a brick bay window from the foundation up
and encroaching upon said restricted area and extending
beyond the front building line about two feet for a distance
of about ten feet, said entire bay window being less than
twenty-three feet east of the lot line or the east line of the
parkway referred to in the restrictions;" that unless the de-
fendants are restrained they will cover the veranda porch
with a roof and that the porch will be a solid and permanent
part of the building of the defendants, and that even in its
present form it is a substantial and integral part of the
building and occupies at least nine feet of the restricted
twenty-five-foot area and is in direct violation of said first
covenant and seriously obstructs the view from the plaint-
iff's residence and also obstructs the plaintiff's light and air,
"and mars and spoils the entire uniformity of the building
line on Fifty-third street from Pabst avenue to Elm street,
in the city of Milwaukee, Wisconsin."

It was also found that the plaintiff Rudolph C. Mueller
died on August 13, 1924, after the commencement of this
action, and the plaintiff *Louise Mueller* became the owner
of the lot formerly owned by herself and her husband; that
neither the plaintiff nor her predecessors in title violated,
waived, or abandoned any of the restrictive covenants; that
the defendants had both constructive and actual notice of
the existence of said restrictive covenants before they began
to erect this building and the porch and also had such notice
before they acquired said real estate, and had notice that
such restrictions were for the benefit of the other lots in-
cluded in the general scheme as well as such lots as were

retained by the common grantee of the land company; that defendants had notice that other owners of lots located in the restricted area had built their buildings in compliance with said lot-line restrictions; that the original plan of seclusion and purpose of private and common ownership and use of the land as a perpetual private park has not been abandoned by the land company nor by the other owners of land abutting on the parkway, and that the conveyance to the city of Milwaukee of an easement for park and boulevard purposes only did not constitute abandonment of the original scheme; that the plaintiff and her husband, now deceased, had no notice or knowledge that the defendant *Rudolph Schier* was building his porch over the building line until plaintiff called it to his attention that the pillars were being erected nine feet within the restricted area.

The trial court also found that the removal of the porch will not disfigure the defendants' building or destroy its beauty and appearance or render it inconvenient for enjoyment as a residence; that it can be removed with small expense, and that its removal will greatly serve to maintain the beauty of the street and maintain the uniform building line; that minor and slight deviations exist on Fifty-third street between Elm street and Pabst avenue, and that such trifling encroachments as do exist occurred without the knowledge of the plaintiff and her predecessors.

The findings were very long and in this synopsis have been greatly condensed, but enough of their substance has been stated to show the issues involved.

For the appellants there was a brief by *Lenicheck, Boesel & Wickhem,* attorneys, and *F. J. Lenicheck,* of counsel, all of Milwaukee, and oral argument by *Mr. Lenicheck.*

For the respondent there was a brief by *Otto A. Lemke,* attorney, and *M. H. Sell,* of counsel, both of Milwaukee, and oral argument by *Mr. Lemke.*

The following opinion was filed November 17, 1925:

JONES, J.  The respective counsel have filed very elaborate briefs which have been quite helpful, but there does not appear in the voluminous record any such amount of conflicting evidence as might be expected.  Some claim is made by appellants' counsel that defendants had no such notice of any restrictions as precluded them from building the porch in the manner they did.  The defendants obtained an abstract showing the state of the title and the restrictive covenants in the chain of title.  *Rudolph Schier,* before constructing the building, consulted his attorney, not informing him of the nature of the porch or showing him the specifications.  He received a favorable opinion, but was told in significant language that it was not necessarily a court opinion.  Some argument on this point is based on the fact that the immediate deed to the defendants made no mention of any restrictions.  We do not regard this as important.  The deeds in the chain of title in very plain language stated the restrictions.  They had been recorded, and defendants thus had constructive notice by which they were bound.

It is also urged by the appellants' counsel that the plaintiff was estopped by failing to make timely objections and that the city building inspector made no objections.  *Mrs. Mueller* testified that while her husband was living he had charge of matters; that she and her husband were absent on a vacation in August; that she at first supposed that the defendants were constructing a terrace and not a porch; that when she found the pillars were up she consulted her attorney. We see no reason for reversing the finding of the court on this subject.

It is argued by the appellants' counsel that the testimony showed a lack of uniformity in the building line, and that

other buildings had been constructed in the same block in which the restriction had not been observed. An examination of the evidence shows that such deviations had been few in number and very slight and were unknown to the plaintiff. If defendants had bought their lots and built their residence knowing that the restrictions were generally disregarded in their neighborhood, if, to their knowledge, business buildings had been erected in their vicinity materially encroaching on the strip in question, if, in short, they could see that the whole situation had been so changed as to result in abandonment of the restrictions, a very different question would be presented. In such a case a court of equity might well refuse to grant an injunction which would be unjust to others. In this connection it is argued by appellants' counsel that it would be unjust to the defendants to require them to take down and remodel the porch, but on this subject there was direct conflict in the testimony of the architects, and we consider that the finding of the court was supported by the evidence. Moreover, the testimony shows that with full notice of the risk the defendants were persistent and obstinate in their determination to build upon the restricted area. It is well settled that when restrictive covenants are entered into with the design of carrying out a general scheme for the improvement and development of property they are enforceable by any grantee against any other grantee having notice. In such a case there is a consideration and mutuality of covenant binding upon each. *Boyden v. Roberts,* 131 Wis. 659, 111 N. W. 701; *Roberts v. Gerber,* 187 Wis. 282, 202 N. W. 701; 27 Ruling Case Law, 764, and cases cited. This rule is conceded by the appellants' counsel, but they claim that there was no proof of any such general plan or scheme; that although the common grantor owned a large tract of unplatted land north and south of Pabst avenue, only two deeds from such grantor were introduced to show the scheme of development. It is

true the deeds to other vendees were not offered, but there is found in the answer the following admission:

"And as these defendants are informed and believe, the said Matthieson Land Company entered into similar covenants and agreements with all other purchasers of the distinct and separate parcels of land sold and purchased and abutting on said proposed park, all of which covenants and agreements were contained in the respective deeds executed and delivered· by said land company to the respective purchasers and upon like considerations, and that all of the said parcels were sold and conveyed by said company by metes and bounds and not by reference to any recorded plat or subdivision."

After such an admission there was no reason for incumbering the record by proof of the deeds to other grantees.

It· is earnestly contended by counsel for the defendants that the original scheme for the development of the property as a high-class residence neighborhood with building restrictions was wholly abandoned as shown by certain deeds, mentioned in the findings, from the common grantor and the predecessors of the plaintiff and defendants and many other lotowners, to the city of ·Milwaukee. One of these was a quitclaim deed signed by the land company and many other lotowners of the 100-foot strip "for highway purposes." Another was by the land company, and dedicated and quitclaimed to the city of Milwaukee an easement in the strip in question to hold the easement for street and boulevard purposes so long as it shall be used for such purposes. Two other deeds containing similar language were received in evidence. The land company in conformity with its covenant conveyed and dedicated the 100-foot strip to all owners on the east and west side thereof.· The *habendum* clause was in part as follows:

"To have and to hold the same as a park, driveway and walk, in common with all the owners of lands abutting on said parkway, the same to remain perpetually as a private

common park, containing a common carriage drive and walk, the same to be not subject to partition or any incident inconsistent with this purpose."

On this language and on the deeds to the city of Milwaukee counsel for the defendants greatly rely to sustain the theory of abandonment. It is argued that if the defendant does not get the benefit of seclusion and a private park he should not be subjected to the burden of a restriction. It is a familiar rule in the construction of deeds that "the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then to give effect to such intention if practicable, when not contrary to law." 2 Devlin, Real Estate (3d ed.) p. 1508.

"The language in which the deed is expressed controls the construction, but, if necessary, consideration can be given to the circumstances leading up to its execution; the object always to be kept in view, however, is to give its language such an interpretation as will effectuate the intention which the parties may be presumed to have had in the use of the words, wherever this can be accomplished without straining the language beyond its fair import." 2 Devlin, Real Estate (3d ed.) p. 1537.

The parties in this case were dealing with lots in a tract of land near enough to Milwaukee so that it became a part of the city. It was contemplated that high-class residences would be built on lots of moderate width on both sides of the 100-foot strip; that there was to be within this strip a parkway and driveway. It is not designated as a private driveway. It seems very plain to us that this driveway was not intended to be a *cul-de-sac* or private lane for the use merely of abutting owners, but that it was intended to be a public street. Whether or not the words above referred to and relied on by the appellants were well chosen, they are not inconsistent with the intention that there should be a public driveway with an attractive parkway on either side.

It is contended that the deeds to the city of Milwaukee conveyed the fee to the 100-foot strip. In one of the deeds referred to, as already stated, the conveyance was expressly for highway purposes; in the others of an easement only. So long as the conveyances were for the purpose of a highway the city took only an easement.

"By a long line of decisions in this state with reference to streets and roads it has become the settled law of this state that in the case of a road or street, whether acquired by condemnation, conveyance, by common-law dedication or by statutory dedication, the city, town, or village takes only an easement for highway purposes, while the fee is held by the abutting landowner. This brings all roads and streets within an uniform rule; but whether the ruling was originally correct as regards statutory dedication by plat under the statutes quoted is doubtful. However this may be, the rule has been so often applied and is of such long standing that it has become a rule of property with reference to roads and streets and cannot now be departed from." *Thorndike v. Milwaukee A. Co.* 143 Wis. 1, 126 N. W. 881; and see cases cited therein.

Subject to the easement the abutting owners remained owners to the center of the street, having all the rights conferred by sec. 80.47 of the Statutes. There is no language in the deeds to the city from which it can be inferred that the abutting owners intended to abandon their right to insist on uniformity in the building line. From the beginning it was the evident purpose of all concerned that the property conveyed should be maintained as a high-grade residence section. It was quite as important that there should be some uniformity in the building line if the 100-foot strip should become a boulevard, as if it should become the kind of nondescript passageway for which the defendants' counsel contended. Some claim is made by counsel for the appellants that the amendment to the state constitution, art. XI, sec. 3a, changes the long settled rule and gives to the city of Milwaukee the absolute ownership of the strip in question.

We do not consider that the provision has any application to the facts of this case.

It is one of the assignments of error that the court made no finding in relation to the tract south of Pabst avenue and the building line and restrictions in that block. It is true that no such findings were made, although testimony was received on this subject and showed some rather unimportant deviations from the building line in that block. But they were not such encroachments on the restricted area as materially affected plaintiff's property. If the plaintiff had the right to insist as against the defendants that uniformity in the building line should be preserved, we do not think that right was lost or abandoned by failing to protest or engage in lawsuits on account of such deviations as were made in another block. Counsel for the appellants cite many cases to the general rule which we recognize, that restrictive covenants are not favored in the law and that doubts as to the construction of restrictive clauses in deeds are to be resolved in favor of natural rights and against the restrictions. But it is well settled that when the intention is plainly shown in the writings to be construed, restrictions of the kind before us will be enforced in equity unless the circumstances are such that the enforcement would be inequitable. In various respects this case is governed by the decision in *Boyden v. Roberts,* 131 Wis. 659, 111 N. W. 701, and the rules there declared need not be repeated here. The question when a person may be enjoined from projecting a porch out over an area which has been restricted by covenants is here for the first time, but it is a subject that has often been discussed in other states. No rule can be laid down as an absolute guide. The decision in each case must be governed by its own facts. In some cases, as where the complaining party has allowed expensive improvements to be made without objection, or where there have been such encroachments in the vicinity as to wholly change the situa-

Mueller v. Schier, 189 Wis. 70.

tion and show that the original plan has been abandoned, or when there is grave doubt as to the meaning of the agreement relied on, relief has been denied.   In the instant case we find none of these reasons for declining to give relief.   The intention of the parties when these lots were sold was too plain to admit of any doubt.   The plaintiff and the defendants built houses costing from $18,000 to $20,000, and the plaintiff at least relied on the 'covenant. Whether the defendants relied on it or not, they were mutually bound by the restrictive covenant.   They ignored it and projected this porch, an integral part of their building, well out over the restricted area.   If this theory were to prevail they could have extended it much further.   Defendants' counsel argue that the encroachment could cause no damage to the plaintiff's property, but the court found against them on this proposition and we concur in that view. It seems unnecessary to review the decisions of other states on the general subject.   They will be found collected in a note in 52 L. R. A. N. s. 1047.

*By the Court.*—Judgment affirmed.

The appellants moved for a rehearing.

In support of the motion there was a brief by *Lenicheck, Boesel & Wickhem,* attorneys, and *F. J. Lenicheck,* of counsel, all of Milwaukee.

In opposition thereto there was a brief by *Edmund Gausewitz* and *John H. Schlintz,* both of Milwaukee.

The motion was denied, with $25 costs, on February 9, 1926.