STEIN and others, Appellants, vs. ENDRES HOME BUILDERS, INC., and another, Respondents.

*May 17—September 13, 1938.*

622

For the appellants there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *Ralph E. Axley,* all of Madison.

*James E. Karn* of Madison, for the respondents.

The following opinion was filed June 21, 1938:

FAIRCHILD, J. When the Eagle Heights Land Company platted a subdivision in the wooded hills bordering Lake Mendota it advertised and sold lots in the plat as carefully planned, restricted, and highly desirable residential property. Promoter and purchasers alike were interested in developing a residential section of peculiar quality, the promoter because adherence to a general plan would increase the value of property yet unsold, the purchasers because they wished to build homes with the assurance that for a period of years, at least, no one would disturb the attractiveness which was expected to result from careful planning.

To insure compliance with this scheme of development, the Eagle Heights Land Company included in the deeds of conveyance certain restrictive covenants, which were to be construed as covenants running with the land. There were seven restrictive clauses, all except one of which were so expressed as to apply to all of the lots in the plat, rather than to the particular lot conveyed.

The language of these restrictions was not such as to indicate clearly that the covenants were mutual. The deeds

might have provided expressly that both grantor and grantee were to be bound, and their heirs and assigns. On the other hand, they might have been so drawn as to place the restrictions only upon the particular lot conveyed, without reference to other lots in the subdivision.

The question is one of intent. If the intent was to express a mutual promise, both grantor and grantee agreeing to conform to the general scheme, the covenants attached to all of the land included in the plan, and were binding upon all purchasers with notice. It has been held by this court in a number of cases that such restrictions are enforceable where intended to benefit the grantee of a conveyance as well as the grantor.

The leading case is *Boyden v. Roberts* (1907), 131 Wis. 659, 666, 111 N. W. 701. John Johnston owned a considerable tract of land on the shore of Lake Geneva. He sold a part to George A. Weiss, at the same time entering into an agreement "by and between" Weiss and Johnston, which recited that Johnston owned certain land, and then provided that it was "covenanted and agreed between said parties" that no part of the property would be used for hotel, club, or camping purposes. This agreement was recorded. A number of years later Edward Uihlein purchased from Johnston a part of the land which Johnston had retained at the time of his conveyance to Weiss. Other purchasers from Johnston objected to the plan of Uihlein to erect a clubhouse, and Uihlein brought an action to quiet title. It was held that the agreement between Weiss and Johnston had created a restrictive covenant, binding upon all purchasers with notice. The court said:

"It seems manifest from the express terms of the agreement, to the effect that it should be binding on all purchasers of any portion of the property and upon the heirs, executors, administrators, and assigns of each party, and that the

covenant should run with the land, that the parties intended to impress the property with an equitable servitude in the nature of a restriction. . . . It is apparent from the established facts that the agreement was executed in pursuance of a general scheme for the benefit and improvement of the property and not for the benefit of the grantor alone, and that each purchaser with notice took the portion conveyed with the right to enforce the restriction against other grantees of portions of the property charged with the restriction. . . . The very object of the restriction was to enhance the value of the property by making it desirable for residence property, and such enhanced value was obviously intended to be secured by imposing upon all the property a servitude in the nature of a restriction which could be enforced by the grantees *inter sese."*

Another case involving the same property and reaching the same result was decided by this court more recently, *Roberts v. Gerber* (1925), 187 Wis. 282, 202 N. W. 701. See also *Ward v. Prospect Manor Corp.* (1926) 188 Wis. 534, 206 N. W. 856.

The language of the Johnston-Weiss agreement was more apt to create a mutual covenant than the language now under consideration. But the law has progressed beyond the point where valuable rights in land may depend upon the choice of apt words. Language very similar to that in the Eagle Heights deeds was used in certain conveyances in *Mueller v. Schier* (1926), 189 Wis. 70, 78, 205 N. W. 912. We find by reference to the printed case that the deeds there provided:

"It is hereby covenanted and agreed for said consideration and as part of the terms of said purchase as follows, to wit:

"First: No building shall be erected or maintained or moved on any part of said land, which extends nearer the parkway hereinafter mentioned than twenty-five feet, and no building shall be erected or maintained or moved on any

part of said land, which extends nearer to Pabst avenue than . . . feet.

"Second: No fences shall be erected on any part of said premises except along the boundary of said land.

"Third: No part of said land shall be used for any kind of mercantile trade, nor . . .

"Sixth: The foregoing five covenants of restriction shall continue in force until abolished by a vote of the owners of at least three-fourths of the frontage abutting upon said parkway, and shall in no wise be abolished or violated for a space of at least fifty years. Said restrictions shall be deemed covenants running with the land, and enforceable on the petition of any owner of land abutting on said parkway. . . ."

It was there ruled that these restrictive covenants were enforceable by one purchaser of the restricted property against another by injunction, and it was said:

"It is well settled that when restrictive covenants are entered into with the design of carrying out a general scheme for the improvement and development of property they are enforceable by any grantee against any other grantee having notice. In such a case there is a consideration and mutuality of covenant binding upon each. *Boyden v. Roberts,* 131 Wis. 659, 111 N. W. 701; *Roberts v. Gerber,* 187 Wis. 282, 202 N. W. 701; 27 Ruling Case Law, 764, and cases cited."

In the present case, the deeds provided that the restrictions were to be construed as covenants running with the land. It is evident that the grantees never intended to make any promise concerning the use of any lot other than the particular lot which each purchased. But the restrictions were upon the use of "any lot." If this language is to be construed to create a covenant running with the land, it must be taken to mean that each purchaser covenanted as to his own lot, and the promoter covenanted as to the remaining lots. Since the arrangement was a general scheme for the improvement and development of property, it was unnecessary to provide expressly for enforcement by one grantee against another.

This construction is not affected by a provision in the deeds for relaxing certain restrictions by consent of the Eagle Heights Land Company. The existence of this power, it is argued, conclusively shows that the restrictions were for the exclusive benefit of the grantor. But it is possible to draw a different inference. If the restrictions were for the exclusive benefit of the grantor, it was unnecessary to express such a power, because the Eagle Heights Land Company could always release its own right under a covenant which was binding upon each grantee individually. Only in case the parties contemplated a general scheme, binding upon the promoter and all purchasers, was it necessary to provide for any such dispensing power. We conclude that the existence of this power indicates a consciousness upon the part of the grantor that the covenants were mutual.

It was natural that the promoter should be selected as the dispensing authority, since it was responsible for the plan, had an interest in its preservation, and could be expected to arrive at a judgment without expense to the petitioning party.

This view of the case is in accord with the doctrine of *Elliston v. Reacher* [1908], 2 Ch. 374, 389, in which the English court considered the effect of a similar power and said:

"Of course the existence of those dispensing powers is a matter for consideration in determining whether the common scheme of restrictions is or is not intended to be for the benefit of the lots offered for sale, but I do not think it is conclusive, or even has any very great bearing one way or the other. These powers may well have been reserved so as to give the vendors rights which otherwise could not be effectually exercised because of the existence of a scheme for the common benefit of the various lots. It does not appear to me to be so likely that their insertion is due to a desire to shew that there was no such scheme. If there were no such scheme, no dispensing power would be necessary,

and though, of course, clauses of this nature might be inserted *ex cautela,* there would be no reason on this hypothesis why the particular dispensing power should be confined to hotels, taverns, public-houses, beer-houses, and manufactories and should not also have extended to shops and warehouses."

When the purchasers took lots in the new subdivision, they did so in reliance upon the representations of the Eagle Heights Land Company that it was as much interested as they were in developing a very desirable residential area. Having gained the confidence of many prospective home builders, the Eagle Heights Land Company stood in the position of trusted manager whose individual judgment was relied upon by the purchasers.

It is argued that the consent which Endres obtained from the Shorewood Hills Realty Company was of the same effect as a consent by the Eagle Heights Land Company, because the one succeeded the other as general owner of the subdivision. But we think that this view cannot be taken without disregarding the fact that purchasers placed particular confidence in the promoters who at that time constituted the Eagle Heights Land Company.

The purchasers did not contemplate a wholesale granting of permission. Control was given to the promoter, in whose judgment all were willing to place their trust. If it were possible for the promoting company to delegate this power, it might come to be exercised not, as all expected, by persons who were trusted to use the power for the establishment of an ideal residential section, but rather by persons interested in exploiting for selfish profit a power which had been granted in the expectation that it would be used to correct injustices resulting from a too rigid enforcement of the general scheme.

The covenants were intended as an aid in the carrying out of a general scheme for the development of ideal homesites.

They placed an equitable servitude upon all of the land in the original subdivision. Through the dissolution of the Eagle Heights Land Company the dispensing power has expired. Purchasers are upon notice that but one house may be placed upon a single lot. Each must submit to this restriction upon the use of his own property, but in return he receives a valuable property right, the right to enjoin a threatened violation of the agreement by other landowners.

The reasoning of the trial court with respect to the right to an injunction was clearly erroneous. The loss to plaintiffs through a relaxation of the building restrictions is a loss which cannot be measured in terms of money. If a sufficient number of violations occur the general scheme may be destroyed. The cases which we have cited above are authority for granting injunctive relief to prevent a threatened violation of a valid building restriction.

There are no facts or circumstances making enforcement of the present restrictions either unjust or inequitable, and therefore the judgment of the trial court must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant plaintiffs relief in accordance with this opinion.

ROSENBERRY, C. J. (*dissenting*). I respectfully dissent in this case for the following reasons briefly stated: It is a general rule that restrictions and prohibitions as to the use of real estate by the grantee should be resolved in favor of the free use of the property. *Hutchinson v. Ulrich* (1893), 145 Ill. 336, 34 N. E. 556, 21 L. R. A. 391.

I concur with the court in the statement that the intent of the parties is controlling. However, that intent is to be determined from the instrument. Resort is to be had to surrounding circumstances only in case of ambiguity. In the event that surrounding circumstances are considered they relate to circumstances of the parties at the time of the exe-

cution and delivery of the instrument. *Farmers' Loan & Trust Co. v. Commercial Bank of Racine* (1862), 15 Wis. *424; *Schuhknecht v. Robers* (1927), 192 Wis. 275, 212 N. W. 657.

The question for determination is, Was it the intent of the parties that the restriction contained in clause 5 of the deed should be for the benefit of all purchasers of lots in the tract in question? I concur in the view of the trial court that the terms of the instrument itself conclusively rebut any such intention on the part of the parties. The reservation of a right to dispense with the condition is inconsistent with an intention that the restriction should be for the benefit of subsequent grantees. In my opinion the restriction was solely for the benefit of the grantors and the following authorities so hold: *Laverack v. Allen* (1924), 2 N. J. Misc. 637, 130 Atl. 615; *Safe-Deposit & Trust Co. v. Flaherty* (1900), 91 Md. 489, 46 Atl. 1099. See also *Stevenson v. Spivey* (1922), 132 Va. 115, 110 S. E. 367; *Green v. Gerner* (Tex. Com. App. 1927), 289 S. W. 999.

In *Rose v. Jasima Realty Corp.* (1926) 218 App. Div. 646, 650, 219 N. Y. Supp. 222, the court said:

"A covenant which the grantor may cancel at will cannot be for the benefit of any one but him."

The fact that the grantor corporation was subsequently dissolved and that as a result there is now no one who can dispense with the restriction does not in my opinion work a different result.

I am authorized to say that Mr. Justice WICKHEM concurs in this dissent.

A motion for a rehearing was denied, without costs, on September 13, 1938.