SILER, Appellant, vs. READ INVESTMENT COMPANY and another, Respondents.

*May 3—June 5, 1956.*

258

For the appellant there were briefs by *Kleczka & Frisch,* attorneys, and *Edward A. Dudek* of counsel, all of Milwaukee, and oral argument by *Mr. Dudek.*

For the respondent Read Investment Company there was a brief by *Charles L. Goldberg,* attorney, and *Francis X. Krembs* of counsel, both of Milwaukee, and oral argument by *Mr. Goldberg.*

For the respondent Paul Rosenblatt there was a brief and oral argument by *Maurice Weinstein* of Milwaukee.

FAIRCHILD, C. J. A review of the record convinces us that the evidence clearly establishes that the letter of December 15, 1953, set forth in the statement of facts, did not create an enforceable agreement between the respondent, Read Investment Company, and the appellant. There can be found in that letter no basis for claiming an enforceable agreement. As it is upon that document that the appellant must rest his case with reference to specific performance, and because it does not meet with the requirements of a valid contract for the sale of land or an interest therein, his claim with respect thereto was properly disallowed. There is no expression of a consideration, nor is there any acknowledgment in writing by the respondent of terms on which such sale could be claimed. Sec. 240.08, Stats.

The findings of fact are supported by the evidence. It appears that on or about October 27, 1953, the respondent, Read Investment Company, and the plaintiff completed negotiations for the purchase and sale of lot 4, block 1. It appears that the appellant expressed some interest in lot 5, and the respondent Read Investment Company wrote the letter which is set out in the statement of facts. In the letter it will be noted there is reference to certain facts which were likely to have a bearing on the future status of lot 5, and at the request of appellant there was interlined in the letter, which had been typewritten, a longhand statement to the effect that the appellant was to be given the first opportunity to buy lot 5. The respondent Read Investment Company later received an offer from the defendant, Rosenblatt, to purchase lot 5. Rosenblatt was informed of the letter in which the respondent had said it would permit the appellant the first opportunity to purchase lot 5. It is a fact respondent did afford the appellant the opportunity to purchase the land described at the same price and upon the same terms and conditions as the defendant Rosenblatt had offered Read Investment Company. Rosenblatt's offer was then accepted.

The premises were conveyed to him on December 16, 1954. Thereafter the appellant began this action, and after a motion for summary judgment was denied, appellant amended the complaint to read as it appears in the statement of facts. We find that no facts exist on which the claim of the appellant against the Read Investment Company can be maintained, and the judgment of the trial court in that respect must be affirmed.

With reference to the further contention that respondent Rosenblatt violated the restrictive covenants regulating the use of lot 5, the trial court ruled that no right of appellant was transgressed by building a residence on the land purchased by Rosenblatt. In treating with the facts in their relation to the claim of appellant, and interpreting the restrictive covenants, the trial court gave due weight to the elements necessary to be considered. In reaching his decision, he followed the settled rule governing construction of instruments of this nature, and in his consideration recognized the principles of law governing the construction of contracts. The interpretation must be upon the entire instrument and not upon disjointed or particular parts of it. It must be borne in mind that the office of judicial construction is not to make a contract conform to the wishes of a party manifesting itself after the agreement has been made, but to determine what was agreed and set forth in the instrument itself. *Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin,* 95 Wis. 111, 115, 116, 69 N. W. 354; 17 C. J. S., Contracts, p. 689, sec. 295; 12 Am. Jur., Contracts, p. 745, sec. 227.

The restrictions before us on this appeal are to be read in the light of the meaning intended by the immediately interested parties. Whether this lot in question was intended to be a residential lot on which a private dwelling may be erected must be determined from an examination of the provisions embodied in the document reciting the restrictions and protective covenants. Those restrictions were duly

recorded, and reference to the controlling provisions will be made. There is no specific restriction with relation to the use to which lot 5, the lot in question, may be put. The restrictions do provide in paragraph 4 as follows:

"Nothing in this paragraph or in any other paragraph of these restrictions shall be construed to prevent the erection and maintenance of equipment and structures to house the necessary equipment used in the operation and maintenance of the proposed co-operative water system, as well as any other equipment owned, used, or maintained by the owners of the 'Green Tree Valley' property for their joint use in the maintenance of lawns, parkways, highways, and the like."

The language employed must be considered in connection with the nature of the object to be accomplished. It must be read in the light of other provisions set forth in the instrument. *Marshall & Ilsley Bank v. Greene,* 227 Wis. 155, 278 N. W. 425. There is a general agreement in texts and court opinions that the purpose to be accomplished set forth in the instrument is material to the ascertainment of that intention. The trial court, from a consideration of all terms and provisions in the restrictive covenants affecting the use to which the several lots may be put, held that the rights claimed by appellant were without foundation, and that he had no cause of action at law or in equity against the respondent. The use of lots in the Green Tree Valley subdivision is for residential purposes. All other building, unless particularly provided for, is excluded. The land is to be used for private residential purposes only, and no building of any kind whatever, except as provided for in the provisions, shall be erected or maintained thereon except private dwelling houses. That provision is stated in sec. 1 of the restrictions and protective covenants. In article 4, a provision is made for the housing of a water-system equipment, and that section reads as already stated. The appellant concedes that the evidence establishes that lot 5 has been used for the purpose of maintaining the

water-utility building, and that two thirds of that building has been removed and only enough remains on the premises for the purpose of maintaining the water-pumping station. In the appellant's brief it is stated that "the plaintiff appellant agrees that the existence of this water-utility building on lot 5 is not inconsistent with the restrictions and covenants. Although it does not constitute a residence, as is provided in the restrictions and covenants, it does qualify as an exception to the residence rule." But this does not exclude a private residence and does not eliminate that lot from among those on which a dwelling complying with the restrictions may be erected. Respondent Rosenblatt has complied with that requirement. Sec. 6 of the restrictions contains the provision that "not more than one single-family dwelling and appurtenances shall be erected upon . . . each lot."

There are other questions raised by the appellant with relation to rulings during the trial. An examination of the record does not disclose any error.

During the trial there was received in evidence an exhibit containing an amendment of the covenants and restrictions. We do not consider it necessary to treat with that. It was calculated to render the service of making the assurance in the restrictions themselves doubly sure. The trial court in his findings refers to that amendment but does not base his decision upon it, and we see no occasion for further treatment of the matter. We agree with the trial court that the letter of December 15, 1953, conferred no rights upon appellant Siler; and that the zoning restrictions do not prevent the erection of a residence such as the evidence shows erected by respondent Rosenblatt.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). Before trial was held on the merits the defendant Rosenblatt moved the court for summary judgment dismissing plaintiff's complaint. Judge MICHAEL T. SULLIVAN, before whom such matter was heard,

filed a memorandum decision under date of June 21, 1955, in which he held that the erection of the dwelling house by Rosenblatt on lot 5 of block 1 of Green Tree Valley subdivision, while there was still maintained thereon the building housing the water utility, constituted a *"palpable violation"* of the restrictive covenants of the plat, while Judge HANLEY came to the opposite conclusion on the trial had on the merits. I find myself in agreement with the holding of Judge SULLIVAN as to there being a violation of the restrictive covenants.

Paragraph 1 of the plat restrictions reads as follows:

"The land herein described and referred to as 'Green Tree Valley,' except as hereinafter provided, shall be used for private residence purposes only, and no building of any kind whatsoever, except as provided hereinafter, shall be erected or maintained thereon except private dwelling houses, each dwelling being designed for occupancy by a single family, and private garages for the sole use of the respective owners or occupants of the lot upon which such garages are erected."

The exception in favor of the water utility appears in the following wording of paragraph 4 of such plat restrictions:

"Nothing in this paragraph or in any other paragraph of these restrictions shall be construed to prevent the erection and maintenance of equipment and structures to house the necessary equipment used in the operation and maintenance of the proposed co-operative water system, as well as any other equipment owned, used, or maintained by the owners of the 'Green Tree Valley' property for their joint use in the maintenance of lawns, parkways, highways, and the like."

An ambiguity is presented as to whether both a dwelling house and the building housing the water utility may be maintained on the same lot. On this question the intent of the Read Investment Company, which was the owner in fee of the land at the time of the recording of the plat, and which drafted the plat restrictions, is material. *Stein v.*

*Endres Home Builders, Inc.* (1938), 228 Wis. 620, 624, 280 N. W. 316. Such intent can be gathered from the practical construction said Read Investment Company has given to these restrictions. *Georgiades v. Glickman* (1956), 272 Wis. 257, 266, 75 N. W. (2d) 573.

The Read Investment Company in its letter of December 15, 1953, to the plaintiff, set forth in finding of fact No. 6, stated that if at some future time the water utility was abandoned on lot 5, then such lot 5, together with the adjoining vacated portion of the street, would become a salable residential lot, and the letter granted the plaintiff the first option to purchase in such event. It can be reasonably inferred from this that the Read Investment Company did not consider that both the water utility and a residence could be maintained on lot 5 at the same time. A further evidence of intent of the Read Investment Company to be gained from its practical construction of the restrictions is the fact that such company attempted to amend the plat restrictions so as to expressly permit the maintenance of both the water utility and the residence on lot 5. While 21 of the 40 lot owners signed such amendment, paragraph 8 of the plat restrictions provided that such amendment required the signatures of the owners of at least three fifths of the land in the plat to such an amendment, so such amendment failed of adoption. It is difficult to believe that the Read Investment Company would have initiated such attempt to amend the plat unless it was under the belief that such a step was necessary in order to permit the erection of a dwelling house on lot 5 while the water utility still was housed there.

I would construe paragraphs 1 and 4 of the restrictions to mean that while the restrictions as to the use of each lot for single-family dwelling-house purposes did not prevent the maintenance of the water utility on lot 5, the presence of the water utility on such lot does prevent it from being used also for dwelling-house purposes. This is consistent with the practical construction which the Read Investment Company

itself placed on the plat restrictions, and seems to me to be better in accord with the underlying objective of the restrictions than the interpretation which the majority opinion has placed thereon.

I would therefore reverse and remand with directions to grant the injunction against the defendant Rosenblatt prayed for in plaintiff's complaint.

I am authorized to state that Mr. Justice STEINLE joins in this dissent.