McKinnon and wife, Respondents, v. Benedict and wife, Appellants.*

*March 1—April 9, 1968.*

* Motion for rehearing denied, with costs, on June 4, 1968.

608

609

610

611

612

614

For the appellants there was a brief by *Konnak & Constantine* of Racine, and oral argument by *Charles M. Constantine.*

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye* and *Donald C. O'Melia.*

HEFFERNAN, J.

*Are the restrictions contained in the letter agreement of August 31, 1960, enforceable in equity*

The judgment provided not only that the Benedicts be restrained from using the property as a site for a trailer park or campsite, but it also provided that the premises were to be used for no other purpose than as an American Plan summer resort until 1985. The judgment not only makes these restrictions applicable to the Benedicts but also provides that these restrictions "be fully enforcible

against any subsequent purchasers of said land, until August 31, 1985." Even the respondents do not contend that this portion of the judgment is valid, for they acknowledge in their brief that this is a simple contract action between the original parties and concede that the case does not involve the enforcement of the covenants against any subsequent grantees of the Benedicts. We, therefore, may dispose of that portion of the judgment that would bind all subsequent purchasers as being in error and, to that extent, even though we were to find that the agreement was otherwise enforceable, in equity we would be obliged to reverse.

The question posed, then, is whether the agreement was enforceable against the Benedicts. No action at law has been commenced for damages by virtue of the breach of the restrictions; and, in fact, the plaintiffs in their complaint claim that they have no adequate remedy at law. We are thus not confronted with the question of damages that may result from the breach of this contract and confine ourselves solely to the right of the plaintiffs to invoke the equitable remedy of specific performance, in this case the enjoining of the defendants from the breach of the contract.

28 Am. Jur., *Injunctions*, pp. 528, 529, sec. 35, points out that:

"Courts of equity exercise discretionary power in the granting or withholding of their extraordinary remedies, and this is particularly true in a case where injunctive relief is sought. . . . The relief is not given as a matter of course for any and every act done or threatened to the person or property of another; its granting rests in the sound discretion of the court to be exercised in accordance with well-settled equitable principles and in the light of all the facts and circumstances in the case . . . ."

In *Maitland v. Twin City Aviation Corp.* (1949), 254 Wis. 541, 549, 37 N. W. 2d 74, we stated that an injunction "should not be granted where the inconveniences

and hardships caused outweigh the benefits." It is frequently stated that an injunction will not be granted where to do so shocks the "conscience" of the court. These rules are equally applicable whether the right which the plaintiff seeks to enforce arises out of a conveyance, a use of property (nuisance) which would be detrimental to the plaintiff's interests, or whether it arises out of a simple contract.

Restatement, 2 *Contracts*, p. 665, sec. 367, "Effect of Unfairness, Hardship, Mistake and Inequitable Conduct," cites three bases for a court of equity refusing specific performance of a contract. They are:

"(a) the consideration for it is grossly inadequate or its terms are otherwise unfair, or

"(b) its enforcement will cause unreasonable or disproportionate hardship or loss to the defendant or to third persons, or

"(c) it was induced by some sharp practice, misrepresentation, or mistake."

The Wisconsin Annotations to the Restatement of Contracts, prepared under the supervision of Professor William Herbert Page, points out at page 244:

"The Wisconsin cases are in accord with the Restatement.

"Specific performance will not be decreed where the contract is unfair or unreasonable or is not founded on an adequate consideration. [Citing cases]"

These, of course, are ancient principles of equity and date back at least to *Smith v. Wood* (1860), 12 Wis. 425 (*382). The court in *Mulligan v. Albertz* (1899), 103 Wis. 140, 143, 144, 78 N. W. 1093, summarized policies of the Wisconsin court in this regard, and we consider these principles applicable to this case:

"An action for the specific performance of a contract is an application to the sound discretion of the court. It does not come as a matter of course. The jurisdiction to

compel it is not compulsory. 'A court of equity must be satisfied that the claim for a deed is fair and just and reasonable, and the contract equal in all its parts and founded on an adequate consideration, before it will interpose with this extraordinary assistance.' [Citing cases]"

The *Mulligan Case* also quoted with approval at page 144 the statement in Pomeroy, *Specific Performance of Contracts* (3d ed.), p. 117, sec. 38:

"The contract must be certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant."

In *Hay v. Lewis* (1876), 39 Wis. 364, 369, we pointed out that, even though there be a legal right on the part of the complainant, that enforcement by injunction may be denied if the court of equity is not satisfied that to grant specific performance would be fair, just, and reasonable, and founded on an adequate consideration. This court stated therein, quoting from *Seymour v. Delancey*, 6 Johns. Ch., 222:

" 'If there be any well founded objection on any of these grounds, the practice of the court is to leave the party to his remedy at law for a compensation in damages.' "

Restatement, 5 *Property*, p. 3188, sec. 528, points out that a promise to use certain land in a particular way for the benefit of the beneficiary of that promise may entitle the beneficiary either to remedies giving him damages for the breach of the promise or injunctive relief forbidding the breach. The comments to this section, subsec. (f), point out that the mere fact that the plaintiff may have no remedy at law does not ipso facto entitle him to enforce a contractual right by injunction.

"A judgment for damages merely shifts to the defendant a harm equal to that which the plaintiff has suffered.

This is not true in the case of the issuance of an injunction. The harm to the defendant which may follow the granting of an injunction against him may be entirely disproportionate to the benefit resulting to the plaintiff."

*Bouchard v. Zetley* (1928), 196 Wis. 635, 220 N. W. 209, and *Gimbel Brothers v. Milwaukee Boston Store* (1915), 161 Wis. 489, 154 N. W. 998, stand for the proposition that equity will not enforce an agreement which would impose an unreasonable hardship on the defendant in order to enforce a bare legal or nonbeneficial right on the plaintiff.

Coupled with the general equitable principle that contracts that are oppressive will not be enforced in equity is the principle of public policy that restrictions on the use of land "are not favored in the law" (*Mueller v. Schier* (1926), 189 Wis. 70, 82, 205 N. W. 912), and that restrictions and prohibitions as to the use of real estate should be resolved, if a doubt exists, in favor of the free use of the property. *Stein v. Endres Home Builders, Inc.* (1938), 228 Wis. 620, 629, 280 N. W. 316.

*Huntley v. Stanchfield* (1921), 174 Wis. 565, 570, 183 N. W. 984, stands for the proposition that, where a covenant prohibited the use of a former lodging house as a hotel, the restriction must be reasonable and stated that:

"On this point the inquiry is, Is the restriction a reasonable one under all the facts and circumstances of the transaction in the light of 'the situation, business, and objects of the parties,' and was the restriction 'for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them . . . .' "

The facts in this case must be examined in light of these accepted principles of equity.

The bargain between the McKinnons and the Benedicts has proved to be a harsh one indeed. If the terms of the agreement of August 31, 1960, are to be enforced literally,

the Benedicts have for a period of twenty-five years stripped themselves of the right to make an optimum and lawful use of their property. The agreement provides that no improvements can be constructed closer to the McKinnon property than those buildings and improvements that were in existence in 1960. This limits any possible expansion to the precise lakeshore area occupied by the buildings of Bent's Camp on that date. While the restriction does not apply to the area beyond the road to the west of county trunk B, that area is at the farthest point of the property from the lake and is the least desirable for any resort or camp purposes. McKinnon by this agreement sought the maintenance of the exact status quo for a period of twenty-five years. Even though additional cottages of the type presently existing were desired, they could not under this agreement have been erected except in the narrowly defined area.

There was clear testimony that Benedict found difficulty in meeting his land-contract obligations, and his efforts to construct a campsite and trailer camp were motivated by the desire to put the resort on a more stable financial basis. While it is understandable that McKinnon may object to the erection of a trailer park and a campsite on adjacent property, nevertheless, they are legal and proper uses, assuming that they conform with the ordinances and statutes and do not constitute a nuisance; and any contract that seeks to prohibit them on a neighbor's property must be supported by consideration that has some relationship to the detriment to be sustained by the property owner whose uses are thus curtailed.

The great hardship sought to be imposed upon the Benedicts is apparent. What was the consideration in exchange for this deprivation of use? The only monetary consideration was the granting of a $5,000 loan, interest free, for a period of seven months. The value of this money for that period of time, if taken at the same interest rate as the 5 percent used on the balance of the

land contract, is approximately $145; and it should be noted that this was not an unsecured loan, since McKinnon took a mortgage on the cottage property of the Benedicts in Michigan. In addition, McKinnon stated that he would "help you try" to reach a solution of the problem posed by Mrs. Vair's occupancy of one of the cottages on a fifty-year lease at $5 per year. His one attempt, as stated above, was a failure; and McKinnon's promise to generate business resulted in an occupancy by only one group for less than a week. For this pittance and these feeble attempts to help with the operational problems of the camp, the Benedicts have sacrificed their right to make lawful and reasonable use of their property.

In oral argument it was pointed out that the value of the $5,000 loan could not be measured in terms of the interest value of the money, since, without this advance, Benedict would have been unable to purchase the camp at all. To our mind, this is evidence of the fact that Benedict was not able to deal at arm's length with McKinnon, for his need for these funds was obviously so great that he was willing to enter into a contract that results in gross inequities. Lord Chancellor Northington said, "necessitous men are not, truly speaking, free men." *Vernon v. Bethell* (1762), 2 Eden 110, 113.

We find that the inadequacy of consideration is so gross as to be unconscionable and a bar to the plaintiffs' invocation of the extraordinary equitable powers of the court.

While there is no doubt that there are benefits from this agreement to McKinnon, they are more than outweighed by the oppressive terms that would be imposed upon the Benedicts. McKinnon testified that he and his wife spend only the summer months on their property. Undoubtedly, these are the months when it is most important that there be no disruption of the natural beauty or the quiet and pleasant enjoyment of the property; nevertheless, there was testimony that the trailer camp

could not be seen from the McKinnon home, nor could the campsite be seen during the summer months of the year, when the leaves were on the trees. Thus, the detriment of which the McKinnons complain, that would be cognizable in an equity action, is minimal,[1] while the damage done to the Benedicts is severe.

Considering all the factors—the inadequacy of the consideration, the small benefit that would be accorded the McKinnons, and the oppressive conditions imposed upon the Benedicts—we conclude that this contract failed to meet the test of reasonableness that is the *sine qua non* of the enforcement of rights in an action in equity.

5A Corbin, *Contracts,* p. 219, sec. 1164, points out that, although a contract is harsh, oppressive, and unconscionable, it may nevertheless be enforceable at law; but, in the discretion of the court, equitable remedies will not be enforced against one who suffers from such harshness and oppression.

A fair reading of the transcript indicates no sharp practice, dishonesty, or overreaching on the part of McKinnon. However, there was a wide disparity between the business experience of the parties. McKinnon was a man of stature in the legal field, an investment counsellor, a former officer of a major corporation, and had held posts of responsibility with the United States government, while, insofar as the record shows, Benedict was a retail jeweler and a man of limited financial ability. He no doubt overvalued the promises of McKinnon to assist in getting the operation "well organized" and to solve the lease problem and to "generate business." These factors, in view of Benedict's financial inability to enter into an arm's-length transaction, may be explanatory of the reason for the agreement, but the agreement viewed even

---

[1] McKinnon testified that the value of his property had depreciated in the amount of $50,000. That testimony was properly admissible, but its probative value was slight, especially since plaintiffs' expert real estate witness stated that he was unable to testify to the amount of the depreciated value.

as of the time of its execution was unfair and based upon inadequate consideration. We, therefore, have no hesitancy in denying the plaintiffs the equitable remedy of injunction.

*Validity of the trailer camp ordinance*
*of the town of Land O' Lakes*

We see little merit in the plaintiffs' contention that the trailer-park ordinance is void.[2] It is their contention that, as a prerequisite to the passage of a trailer-park ordinance, the parking-permit fee be established by a town levy only after a public notice of a meeting. The transcript leaves some doubt as to whether such meeting was held. However, Jessie Sparks, the clerk of the town of Land O' Lakes, testified that the purported ordinance was passed at a town meeting held in June of 1960. We consider this testimony sufficient to trigger the presumption that the ordinance was properly passed. Sec. 889.04, Stats., provides:

"**County and municipal ordinances.** Matter printed in any newspaper, book, pamphlet, or other form purporting to be so published by any county, town, city or village in this state as a copy of its ordinance, bylaw, resolution or regulation, is prima facie evidence thereof; and after 3 years from the date of such publication, such book or pamphlet shall be conclusive proof of the regularity of the adoption and publication of the ordinance, bylaw, resolution or regulation."

We consider that the document submitted into evidence captioned as "Trailer Park Ordinance" is proof

[2] If in fact the ordinance were void, the right to have a trailer park would be unrestricted. It is only by the exercise of the municipality's delegated police power that trailer camps may be regulated. If the regulation is void, the park can be erected on private property as the owner sees fit, provided he complies with the use classification of the zoning ordinances. If the plaintiffs are correct that the ordinance is void, the result is self-defeating.

of the regularity of the adoption and publication of the trailer-park ordinance.

The respondents also point out that the description of the property on which the trailer park was to be located as set forth in the license does not conform to the actual location of the construction. Whether or not such license was correct in this respect need not concern us, for the license expired on March 31, 1966, and the effect of this particular license is moot.

We see no defect in the building permit itself. The gravamen of the attack on the permit is that the application and permit were "altered." The original application, it is contended, was only for construction of a trailer park. Thereafter, the words, "and camp grounds" were added. We see no alteration which would vitiate the permit if it is otherwise valid, since it is uncontested that the additional language was added by Jessie Sparks, whose duty it was to assist the applicant in the preparation of the application.

It is also contended that proper plans were not filed prior to the issuance of the permit for the construction of the trailer park. Since the trailer-park permit itself is not a continuing license to operate and is renewable annually, we see no reason why the town cannot require that plans showing conformance with proper standards be filed prior to the issuance of a new trailer-park permit. We see no invalidity in the ordinance or permits that is pertinent to the plaintiffs' present cause of action for injunction.

### Action for trespass

In addition to the plaintiffs' prayer for injunctive relief restraining the defendants from erecting improvements on the Bent's Camp property, the plaintiffs state a cause of action for trespassing on a point of land projecting into Mamie Lake that allegedly belonged to McKinnon and was completely surrounded by the Bene-

dict property. There is no evidence that creates any doubt as to the ownership of the land in McKinnon. While the defendants submitted a fugitive deed indicating conveyance to one not in the chain of title, we conclude that, in the present posture of this case, no doubt is cast upon McKinnon's title.

The findings of fact, conclusions of law, and judgment indicate that the title to the property was not seriously in dispute. We also conclude that the finding of fact that there was a trespass upon the property is not contrary to the great weight and clear preponderance of the evidence. In that respect, the judgment of the trial court for damages and the injunction should be affirmed.

The defendants have not contended that the costs allowed for surveyors' fees, abstract, plat book, service fees, and certified copies were not properly allowable as costs under sec. 271.04, Stats., as being attributable to the trespass action. They do dispute, however, the item of damages of $750 allowed for tree planting on the point of land. Their position is that no trees of any consequence grew on the property prior to the alleged trespass and that, hence, the replacement with quality trees would place the plaintiffs in a better position than they were prior to the trespass. However, an appraisal of the evidence indicates that, prior to the bulldozing on the area, there was a small hill on a portion of the point and that this mound with its shrub and small-tree covering screened any activities beyond the point and protected the scenic view from the McKinnons' home. As we view the evidence, the tree planting is for the purpose of restoring that screen formerly afforded by the hill. As a consequence, we view this item of damages as being no more than placing the plaintiffs in the same position as they were prior to clearing the property and bulldozing the mound.

As a part of the items of damages and costs, the trial court awarded the plaintiffs the sum of $1,355.70 as counsel fees. It is clear that these fees are not attributable

solely to the trespass action and, therefore, should not be allowed in the amount set by the trial court. In any event, in view of the mandate herein, the plaintiffs have not prevailed in this lawsuit and, accordingly, are not entitled to costs in the overall action. Costs are properly allowable to the plaintiffs only to the extent that they were incurred in the prosecution of the trespass action and in the proceedings to restrain further trespass on the McKinnon property.

We conclude that the assessment of costs is properly a matter to be determined by the trial court.

The appellants also allege that they have been damaged by virtue of the improvident granting of the injunction restraining the use of their own property. However, the determination of such damages, if any, are a matter for the trial court.

*By the Court.*—Judgment affirmed in part, reversed in part, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.