# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1608 |
| COMPLETE TITLE: | Richard Forshee, Judith Timmerman, Verlan E. Edwards, Robert R. Olson, Mary L. Edwards on behalf of Verlan & Mary Edwards LLP and Jean Forshee, Janet A. Olson, |
| | Plaintiffs-Respondents-Petitioners, |
| | v. |
| | Lee Neuschwander and Mary Jo Neuschwander, |
| | Defendants-Appellants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 377 Wis. 2d 162, 900 N.W.2d 100
PDC No: 2017 WI App 43 - Published

| | |
|---|---|
| OPINION FILED: | June 5, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 23, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Sawyer |
| JUDGE: | John M. Yackel |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, J. concurs (Opinion filed). KELLY, J. concurs (joining majority except to the extent it is inconsistent with this concurrence), joined by BRADLEY, R. G., J. (Opinion filed). |
| DISSENTED: | BRADLEY, A. W., J. dissents (Opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-respondents-petitioners, there were briefs filed by *Linda I. Coleman*, *John R. Carlson*, and *Spears*, *Carlson*, *& Coleman*, *S.C.*, Washburn. There was an oral argument by *Linda I. Coleman.*

For the defendants-appellants, there was a brief filed by *Anne Berleman Kearney*, *Joseph D. Kearney*, and *Appellate*

*Consulting Group*, Milwaukee.  There was an oral argument by *Anne Berleman Kearney*.

An amicus curiae brief was filed on behalf of the Wisconsin REALTORS Association by *Cori Moore Lamont* and *Wisconsin REALTORS Association*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1608
(L.C. No. 2016CV4)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Richard Forshee, Judith Timmerman, Verlan E. Edwards, Robert R. Olson, Mary L. Edwards on behalf of Verlan & Mary Edwards LLP and Jean Forshee, Janet A. Olson,**

      **Plaintiffs-Respondents-Petitioners,**

   **v.**

**Lee Neuschwander and Mary Jo Neuschwander,**

      **Defendants-Appellants.**

**FILED**

**JUN 5, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   PATIENCE DRAKE ROGGENSACK, C.J.   Lee and Mary Jo Neuschwander purchased property on Hayward Lake in Hayward, Wisconsin.   They renovated the large house and began renting it to vacationers on both short-term and long-term bases.   Several neighboring property owners (the "Neighbors") objected to the use of the property as a vacation rental.   They brought suit in Sawyer County Circuit Court, claiming that a restrictive covenant that encumbers all lots in the subdivision of which

Neuschwanders' property is a part, precludes short-term rentals of property.[1]

¶2 The Sawyer County Circuit Court held in favor of the Neighbors and enjoined Neuschwanders from further short-term rentals, except for the Birkebeiner weekend.[2] The court of appeals reversed. Forshee v. Neuschwander, 2017 WI App 43, 377 Wis. 2d 162, 900 N.W.2d 100. The Neighbors petitioned for review, which we granted.

¶3 We review a single issue: Whether the short-term rental of the Neuschwanders' property constitutes "commercial activity" under the restrictive covenant that encumbers their property. We conclude that the term, "commercial activity," which is undefined in the covenant, is ambiguous. Therefore, we narrowly interpret it and conclude that it does not preclude either short-term or long-term rentals of Neuschwanders' property. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶4 The Neuschwanders' property was purchased by the Louisiana Pacific Corporation in 1984 and 1985. It consists of two lots of a 15-lot subdivision that was originally owned by

---

[1] No objection was made to long-term rentals of the Neuschwanders' property. Although what would be characterized as long-term rentals is not apparent from the record before us.

[2] The Honorable John M. Yackel of Sawyer County presided.

four individuals. All lots in the subdivision have been encumbered by a restrictive covenant that provides:

1. No dwelling can be erected on said property with a living space of less than 1,000 square feet.

2. There shall be no subdivision of existing lots.

3. There shall be no commercial activity allowed on any of said lots.

¶5 Louisiana Pacific built the first house in the subdivision. It is a large building that Louisiana Pacific used to provide short stays to clients, vendors, politicians and employees. The house was used for everything from single-night events to month-long stays, as well as serving as a corporate social center.

¶6 In 2014, the Neuschwanders bought the property and expended a substantial amount of money renovating the large house. While the Neuschwanders used the property themselves on occasion, the primary use has been the rental of the property to vacationers on both short-term and long-term bases through the website VRBO (Vacation Rental By Owner).[3]

¶7 Neuschwanders' property consists of two lots equaling 2.2 acres and a large house. It is located on a peninsula in Lake Hayward in the City of Hayward, Wisconsin. It is accessible via a narrow, private road that Louisiana Pacific built. There are a number of other residents in the

---

[3] Vacation Rental By Owner, https://www.vrbo.com.

subdivision, several of whom filed this action.  Each of their homes was built after Louisiana Pacific's construction of the now-Neuschwander house.

¶8   The Neuschwanders' house is large, about 4,000 square feet, and able to sleep up to 15 people.  When renting the property, the occupants treat the house in the same way that an owner would:  They sleep, cook, eat, and recreate in their preferred manner.  During the course of renters' stays the Neuschwanders do not provide any services to renters.  For example, there is no maid or room service of any type.

¶9   The Neighbors' complaint alleged that the restrictive covenant that proscribes "commercial activity" was violated by short-term rentals of the property.  They sought injunctive relief to prevent the Neuschwanders from "further violating the restrictions placed upon [their property]."  Upon the parties' competing motions for summary judgment, the circuit court agreed with the Neighbors and concluded that short-term rentals of the Neuschwanders' property violated the restrictive covenant.

¶10 The circuit court explained that the unstated "purpose of the restrictive covenant was to ensure and maintain a quiet neighborhood where people would know their neighbors," and that the Neuschwanders' short-term rentals violated that purpose. The circuit court enjoined the Neuschwanders from using their

4

property for short-term rentals except for the Birkebeiner weekend.[4] The Neuschwanders appealed.

¶11 On appeal, the Neuschwanders alleged that the restrictive covenant is ambiguous and that the circuit court improperly considered extrinsic evidence in coming to its conclusion. In a published opinion,[5] the court of appeals agreed with the Neuschwanders, concluding that the restrictive covenant is ambiguous and that it did not bar short-term rentals. Accordingly, the court of appeals reversed the circuit court's summary judgment and lifted the injunction on the Neuschwanders' use of their property.

¶12 The Neighbors sought review of the court of appeals' decision, which we granted. For the reasons explained hereafter, we affirm the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶13 We independently review a grant or denial of summary judgment by applying the same standards used in the circuit court and the court of appeals, while benefitting from the discussions of both courts. Sands v. Menard, 2017 WI 110, ¶28, 379 Wis. 2d 1, 904 N.W.2d 789; Dufour v. Progressive Classic Ins. Co., 2016 WI 59, ¶12, 370 Wis. 2d 313, 881 N.W.2d 678.

---

[4] The circuit court did not explain why the Birkebeiner weekend was excluded from what it held was proscribed by the restrictive covenant.

[5] Forshee v. Neuschwander, 2017 WI App 43, 377 Wis. 2d 162, 900 N.W.2d 100.

Summary judgment is appropriate where there is no genuine issue of material fact and the movant has established the right to judgment as a matter of law. Wis. Stat. § 802.08(2) (2015-16);[6] Sands, 379 Wis. 2d 1, ¶28.

¶14 Interpretation of a restrictive covenant is a question of law that we review independently of prior court decisions. Zinda v. Krause, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995). Whether the language employed in a restrictive covenant is ambiguous is also a question of law that we independently decide. Id.

B. Restrictive Covenants

1. General principles

¶15 Covenants come in various forms, and are characterized by the nature of the burden or benefit imposed. Restatement (Third) of Property: Servitudes § 1.3(3) cmt. e. (Am. Law Inst. 2000). A covenant becomes a servitude on the land if either its burden or its benefit runs with the land. Id. cmt. a. "A restrictive covenant is a negative covenant that limits permissible uses of land." Id. § 1.3(3).

¶16 Public policy of the State of Wisconsin "favors the free and unrestricted use of property." Crowley v. Knapp, 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980). "Accordingly, restrictions contained in deeds and in zoning ordinances must be strictly construed to favor unencumbered and free use of

---

[6] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

property." Id. (citing McKinnon v. Benedict, 38 Wis. 2d 607, 619, 157 N.W.2d 665 (1968) (further citations omitted)). Consequently, in order to be enforceable, deed restrictions that limit the free use of property "must be expressed in clear, unambiguous, and peremptory terms." Id. at 435.

¶17 In resolving contests about the meaning of a restrictive covenant in a deed, we do not look for amorphous general intent, but rather, we determine the meaning of the restriction by the words actually used. Id. at 438. Construction of a covenant is necessary when the covenant is ambiguous. Id. at 434 (citing Bollenbeck v. Vill. of Shorewood Hills, 237 Wis. 501, 297 N.W.568 (1941)); see also Peterson v. Gales, 191 Wis. 137, 139-40, 210 N.W. 407 (1926) (construing "house" as an ambiguous term such that the restrictive covenant did not prohibit the use of the property as a machine shop). If the words employed in the restrictive covenant are ambiguous, we resolve disputes about the meaning of the restriction in favor of the free use of the property. Crowley, 94 Wis. 2d at 438 n.3 (citing Schneider v. Eckhoff, 188 Wis. 550, 556, 206 N.W. 838 (1926) (providing that because "the language used in the restriction is doubtful in meaning . . . all doubt, under the general rule, should be resolved in favor of the free use [of land]")).

¶18 On the other hand, if the meaning of a restrictive covenant clearly can be ascertained from the words of the covenant itself, its restrictions will be enforced. See Zinda, 191 Wis. 2d at 166; see also Voyager Vill. Prop. Owners Ass'n v.

7

Johnson, 97 Wis. 2d 747, 749, 295 N.W.2d 14 (Ct. App. 1980) (concluding that "camping equipment" clearly included camping trailers).

### 2. The restrictive covenant

¶19 Currently, individuals who rent and occupy the Neuschwanders' residence on both short-term and long-term bases use the property in a manner similar to how an owner uses his or her own house. They buy their own food, cook their own meals, make their own beds and recreate as the house's location provides, just as a property owner would.

¶20 As we consider those uses, we review a restrictive covenant that declares that "[t]here shall be no commercial activity allowed on any of said lots." The key term in the covenant, as focused on by the parties in their briefs and at oral argument, is "commercial activity." Therefore, we examine whether this term precludes short-term rentals of Neuschwanders' property.

¶21 We consider the term, "commercial activity," not in isolation, but in the context of the deed's restrictions as a whole. Zinda, 191 Wis. 2d at 166. However, reviewing "commercial activity" in the context of the two other provisions of the restrictive covenant at issue here does not add clarity to the term we must interpret. We can see that the covenanters clearly required dwellings to have a minimum size and that lots could not be subdivided. However, those two provisions provide no guidance as to what was meant by the "commercial activity" that the covenant precludes. "Commercial activity" is simply an

8

undefined term, whether read separately or in the context of the complete covenant.

¶22 It could be that the drafters were attempting to prevent a lot from being used as a lakefront restaurant or a filling station for boats. On the other hand, perhaps a homeowner could maintain a daycare for preschool children in his or her home without running afoul of the commercial activity proscription. Because we are unable to clearly discern the restrictive covenant's meaning through the text of covenant itself, we conclude that it is ambiguous. Id. at 165-66 ("The language in a restrictive covenant is ambiguous if it is susceptible to more than one reasonable interpretation.").

¶23 When we determine the ordinary meaning of undefined words, a dictionary often is helpful to our construction. Xcel Energy Servs. v. LIRC, 2013 WI 64, ¶30, 349 Wis. 2d 234, 833 N.W.2d 665 (quoting Cty. of Dane v. LIRC, 2009 WI 9, ¶23, 315 Wis. 2d 293, 759 N.W.2d 571). We do so here as we construe "commercial activity" with the aid of its dictionary definition.

¶24 Webster's Dictionary defines "commercial" as "engaged in work designed for the market," "of or relating to commerce," or "characteristic of commerce." Commercial, Webster's New Collegiate Dictionary 226 (1974 ed.). "Commerce," then, refers to "the exchange or buying and selling of commodities on a large scale involving transportation from place to place." Commerce, id.

¶25 These dictionary definitions posit that "commercial activity" includes some form of buying and selling. However,

the dictionary definition is very nonspecific. One could read these definitions to mean that "commercial activity" is limited to products bought or sold and subsequently moved to another location, thereby excluding purchases and sales that result in consumption or use of the purchased item or service in a single place. However, what we take away from our review of dictionary definitions is that in the context of the entirety of the restrictive covenant on the Neuschwanders' property, we cannot clearly decipher the meaning of "commercial activity."

¶26 Case law requires that in order to be enforceable, deed restrictions "must be expressed in clear, unambiguous, and peremptory terms." Crowley, 94 Wis. 2d at 435. However, we are unable to determine precisely what the words in this covenant preclude. Stated otherwise, the covenant presents no "clear, unambiguous, and peremptory terms" to follow. Id. Accordingly, because this restrictive covenant is ambiguous, we must resolve the contest before us in favor of the property owners' ability to use their property freely. Id. at 438 n.3.

¶27 Furthermore, support for interpreting "commercial activity" narrowly as not precluding use of the property for short-term rentals is provided by the way in which the first homeowner in the subdivision, Louisiana Pacific, interpreted "commercial activity" as it used the same property. The record establishes that since Louisiana Pacific's construction of the house in the mid-1980s and throughout its ownership, the house

10

was used by individuals who were not the owners,[7] for both short-term and long-term stays. Under Louisiana Pacific's ownership, guests would arrive at the house and leave anywhere from hours later to a full month later. Therefore, because of Louisiana Pacific's corporate status and because of its use of the house, Louisiana Pacific's ownership did not further the purpose of "ensuring a quiet neighborhood where people would know their neighbors," which the circuit court concluded the restrictive covenant was enacted to provide. And finally, if the encumbrance actually were placed on the property to proscribe short-term stays, as the original owner of the property who would have been well-aware of the restrictive covenant, Louisiana Pacific would not have built and maintained the house as it did.

¶28 Because we cannot specify the precise activities included in the definition of "commercial activity," we interpret the covenant narrowly and conclude that short-term rentals are not prohibited. Therefore, the Neuschwanders are not precluded from renting their property for short or long periods of time. Accordingly, we affirm the court of appeals decision voiding the injunction issued by the circuit court.

---

[7] It is worth reiterating that Louisiana Pacific is a corporation whose business operations includes buying products from suppliers and selling products to vendors and consumers, and that both suppliers and vendors were entertained at the property during Louisiana Pacific's ownership.

11

### III.  CONCLUSION

¶29  Upon our review, we consider a single issue:  Whether the short-term rental of the Neuschwanders' property constitutes "commercial activity" under the restrictive covenant that encumbers their property.  We conclude that the term, "commercial activity," which is undefined in the covenant, is ambiguous.  Therefore, we narrowly interpret it and conclude that it does not preclude either short-term or long-term rentals of Neuschwanders' property.  Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

12

¶30 SHIRLEY S. ABRAHAMSON, J. *(concurring).* The lead opinion[1] reaches the right conclusion for the wrong reasons. The decision of the court of appeals should be affirmed, but not because "commercial activity" is an ambiguous term that is construed in favor of the free and unencumbered use of the property.

¶31 Instead, the decision of the court of appeals should be affirmed because the Neuschwanders did not violate the unambiguous language of the deed restriction.

¶32 Because the lead opinion incorrectly concludes that the term "commercial activity" is ambiguous, it fails to address many of the parties' substantive arguments regarding the application of the restrictive covenant to the activity in question, namely, the short-term renting of the Neuschwanders' property.

¶33 Accordingly, I write separately to set forth the correct legal analysis that should have been relied upon by the lead opinion in deciding the instant case.

I

¶34 The lead opinion erroneously concludes that the term "commercial activity" is ambiguous. It is not.

¶35 A restrictive covenant is ambiguous if its language is reasonably susceptible to more than one interpretation. Zinda v. Krause, 191 Wis. 2d 154, 165-66, 528 N.W.2d 55 (Ct. App. 1995). "[I]f the intent of a restrictive covenant can be

---

[1] See ¶76 n.1, infra (Ann Walsh Bradley, J., dissenting).

1

clearly ascertained from the covenant itself, the restrictions will be enforced." Zinda, 191 Wis. 2d at 166. "Intent" does not mean "the subjective intent of the drafter," but rather, it refers to "the scope and purpose of the covenant as manifest by the language used." Zinda, 191 Wis. 2d at 166. "'[W]here the language used is clear and unambiguous[,] it will be given its obvious meaning.'" Bubolz v. Dane Cty., 159 Wis. 2d 284, 294, 464 N.W.2d 67 (Ct. App. 1990) (quoted source omitted). Importantly, language is not rendered ambiguous simply because it may be difficult to apply to the facts of a particular case. Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI 86, ¶20, 311 Wis. 2d 492, 753 N.W.2d 448.

¶36 The restrictive covenant in the instant case reads as follows: "There shall be no commercial activity allowed on any of said lots."

¶37 The term "commercial activity" is reasonably susceptible to only one interpretation, namely, the interpretation attributed to it by both the circuit court and court of appeals. The term "commercial activity" refers to an activity undertaken with the intent to profit. See Forshee v. Neuschwander, 2017 WI App 43, ¶6, 377 Wis. 2d 162, 900 N.W.2d 100 (stating that the circuit court defined "commercial" as "viewed with regard to profit"); Forshee, 377 Wis. 2d 162, ¶11 (using a dictionary to define "commercial activity" to mean "activity of buying and selling, or activity by which [the Neuschwanders] make or intend to make a profit"); see also Black's Law Dictionary 41 (10th ed. 2014) (defining "commercial

2

activity" as "[a]n activity, such as operating a business, conducted to make a profit").

¶38 The term "commercial activity," although breathtaking in scope,[2] does not appear to be reasonably susceptible to more

_____

[2] Indeed, the restrictive covenant may be so broad that it is unenforceable.

Although the drafters of the restrictive covenant may have intended only to prohibit brick-and-mortar businesses and the nuisances that come with them (e.g., incessant noise and traffic), the language they used in the covenant is not limited to a prohibition on brick-and-mortar businesses.

It is easy to imagine many unobtrusive activities that could have been conducted on the property in 1982 with the intent to make a profit that would have been prohibited under a literal application of the restrictive covenant. For example, could an attorney work on a case from home and bill for the time? Could an architect work on a design at home? Could an artist produce a work of art at home and mail it to the buyer? These and many other "commercial activities" might be prohibited under the expansive language of the restrictive covenant, even though these activities would have had no effect on neighboring property owners.

Has a restrictive covenant that was broad when it was written in 1982 become practically boundless with the passage of time and the development of technology? The advent of the internet has vastly expanded the universe of activities that can be conducted in one's home for profit. Can online entertainers create content from home and upload that content to sites like YouTube? Can an author write an article and upload it to an online publication from home? Can an investor trade stock online from home? Can a person sell belongings on sites like Craigslist from home?

One might reasonably question whether putting the property up for sale and showing it to potential buyers would be prohibited under a literal application of the restrictive covenant's plain language. However, if the language of the restriction is unambiguous, the language controls. Tufail v. Midwest Hospitality, LLC, 2013 WI 62, ¶¶25-26, 348 Wis. 2d 631, 833 N.W.2d 586.

than one interpretation. Notably, the lead opinion does not posit a second reasonable interpretation. Instead, the lead opinion confuses ambiguous language with unambiguous language that is difficult to apply to the facts of the instant case.[3]

¶39 Because the language of the restrictive covenant is reasonably susceptible to only one meaning, I now apply that unambiguous language to the facts of the instant case.

II

A

¶40 First, it must be determined whether the Neuschwanders' short-term rentals qualify as "commercial activity." The short-term rentals constitute "commercial activity" if the Neuschwanders engaged in the short-term rentals for the purpose of making a profit.

¶41 The conclusion that the short-term rentals qualify as "commercial activity" is unavoidable. As the court of appeals observed, "it is undisputed that the Neuschwanders make money, and intend to make money, and by inference a profit, by renting their property to others on a short-term basis."

¶42 Second, in order for the "commercial activity" to be prohibited by the restrictive covenant, it must be determined

---

[3] See Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI 86, ¶20, 311 Wis. 2d 492, 753 N.W.2d 448 ("An otherwise unambiguous provision is not rendered ambiguous solely because it is difficult to apply the provision to the facts of a particular case.").

that the "commercial activity" is taking place "on" the property.[4]

¶43 In the instant case, there is no "commercial activity" taking place on the Neuschwanders' property. The Neuschwanders are correct that, as a factual matter, the only activity that occurs <u>on</u> the property is residential, not commercial, in nature.

¶44 The Neighbors' reliance on the federal district court decision <u>Gibbs v. Williams</u> is misplaced.[5] The court in <u>Gibbs</u> was tasked with interpreting language that is materially different than the language at issue in the instant case.

¶45 In <u>Gibbs</u>, the court interpreted a restrictive covenant that stated that the subject property "shall not at any time <u>be used</u> for the purpose of any . . . business of any description . . . ." <u>Gibbs v. Williams</u>, No. 14-cv-420-jdp, 2015 WL 5440628, at *1 (W.D. Wis. Sept. 14, 2015) (emphasis added).

¶46 If the property at issue in the instant case were subject to the language of the restrictive covenant discussed in <u>Gibbs</u>, the Neuschwanders' short-term rentals would likely violate the restrictive covenant. The Neuschwanders' property is being <u>used</u> for commercial activity in that the temporary use

---

[4] There is no reasonable basis for concluding that "on," in the context of the restrictive covenant, means anything other than <u>physically</u> on the property.

[5] <u>Gibbs v. Williams</u>, No. 14-cv-420-jdp, 2015 WL 5440628, at *1 (W.D. Wis. Sept. 14, 2015).

and enjoyment of the property is the "thing" being bought and sold.

¶47 However, the restrictive covenant in the instant case is interested in the nature of the specific activities that occur on the property. In the instant case, the Neuschwanders' activity involves the property, but it is not conducted on the property. To conclude otherwise would be to impermissibly rewrite the language of the restrictive covenant.[6]

B

¶48 The Neighbors cannot rewrite the unambiguous language of the restrictive covenant so that it focuses on the use of the property as opposed to focusing on the nature of the activities that occur on the property.

¶49 However, to the extent the restrictive covenant directs the court to focus on the use of the property, Wisconsin courts focus on how the property is used by the occupants rather than how the property is used by the owners.

¶50 The court of appeals' decisions in State ex rel. Harding v. Door County Board of Adjustment[7] and Heef Realty & Investments, LLP v. City of Cedarburg Board of Appeals[8] are

---

[6] Columbia Propane, L.P. v. Wis. Gas Co., 2003 WI 38, ¶12, 261 Wis. 2d 70, 661 N.W.2d 776 (courts cannot insert into a contract what has been omitted, nor can they rewrite a contract made by the parties).

[7] State ex rel. Harding v. Door Cty. Bd. of Adjustment, 125 Wis. 2d 269, 371 N.W.2d 403 (Ct. App. 1985).

[8] Heef Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals, 2015 WI App 23, 361 Wis. 2d 185, 861 N.W.2d 797.

instructive, even though they involve zoning ordinances rather than restrictive covenants.

¶51 In Harding, a property owner sought a building permit that would allow him to build a time-share property owned by 13 families, each of which would have rights to occupy the property for four weeks per year. Harding, 125 Wis. 2d at 270. The Board claimed that this proposed use would violate a zoning code ordinance that restricts the use of the property to single-family dwellings. Harding, 125 Wis. 2d at 270.

¶52 The court of appeals held that the ordinance did not unambiguously prohibit the property's use as a time-share. In so holding, the court focused on how the time-share would be used by its occupants (i.e., residential use) rather than how the property was being used by the owners (i.e., commercial use):

> The building's purpose is to provide living quarters for a family. The proposed building's floor plan has a kitchen, dining room, and living room in addition to four bedrooms. The building would be occupied exclusively by one family. Although a different family would occupy the building each week, that one family would occupy the building to the exclusion of the other twelve families.

Harding, 125 Wis. 2d at 271.

¶53 In Heef Realty, the owners of two homes initiated a lawsuit when the Board told them that they could not use their homes for short-term rentals. Heef Realty, 361 Wis. 2d 185, ¶2. The Board claimed that because the homes were located in a "single-family residential zone" that permits only "single-

7

family dwellings," short-term rentals were not allowed.  Heef Realty, 361 Wis. 2d 185, ¶5.

¶54  The court of appeals held that the zoning ordinance did not prohibit short-term rentals of the homes at issue.  In so holding, the court of appeals relied heavily on Harding, noting that "the cases are essentially the same."  Heef Realty, 361 Wis. 2d 185, ¶10.  Like in Harding, the court of appeals focused on how the property would be used by its occupants rather than focusing on the commercial nature of the owners' short-term rentals:

> The properties here are designed for use by one family, just like the property in Harding.  The Ordinance here permits single-family dwellings in a single-family residential zone, just like in Harding.  And, just like in Harding, only one family will use each home at a time.

Heef Realty, 361 Wis. 2d 185, ¶10.[9]

¶55 The court of appeals in both Harding and Heef Realty could not have reached the same conclusions if it had focused on how the property was being used by its owners instead of how the property was being used by its occupants.  The property owners in both cases were using the properties for commercial purposes (i.e., renting for profit), not residential purposes.

---

[9] The court of appeals also noted "that the home [in Harding] was designed with a kitchen, dining room, living room, and four bedrooms.  This focus on the daily living connotation of 'residential' gibes [sic] with the circuit court's explanation that what makes a home a residence is its use 'to sleep, eat, shower, relax, things of that nature.'"  Heef Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals, 2015 WI App 23, ¶12, 361 Wis. 2d 185, 861 N.W.2d 797.

8

Nonetheless, because the occupants were using the properties for residential purposes, the court of appeals in Harding and Heef Realty both concluded that the ordinances at issue were not violated by the property owners' commercial use of the property for short-term rentals.

¶56 The court of appeals decision in Bubolz v. Dane County is also instructive, even though it does not involve short-term rentals.[10]

¶57 In Bubolz, the property-owning defendants were operating an electrical contracting business out of their home. Bubolz, 159 Wis. 2d at 291. The property on which their home was located was subject to a deed restriction that specified that "[n]ot more than one (1) single family residence shall be constructed on said premises at a cost of not less than $20,000.00." Bubolz, 159 Wis. 2d at 290. The property-owning defendants argued that the restrictive covenant pertained to and limited only what could be constructed on the property. Bubolz, 159 Wis. 2d at 293. They contended that the restrictive covenant did not pertain to or limit their use of the property for a commercial purpose. Bubolz, 159 Wis. 2d at 293.

¶58 The court of appeals rejected the property-owning defendants' argument. First, the court of appeals held that the restrictive covenant at issue extended to the use of the property. Bubolz, 159 Wis. 2d at 294. Then, as it did in Harding, the court of appeals focused on how the property was

_____

[10] Bubolz v. Dane Cty., 159 Wis. 2d 284, 464 N.W.2d 67 (Ct. App. 1990).

9

being used by the occupants. In Bubolz, the occupants happened to also be the property owners who were conducting the electrical contracting business out of their home. Thus, in Bubolz, the occupants/owners were using the property for both residential and commercial purposes. Bubolz, 159 Wis. 2d at 294. This is in contrast to the occupants of the properties in Harding and Heef Realty, who used the properties at issue for residential purposes only.

¶59 Accordingly, to the extent the restrictive covenant directs the court to focus on the use of the property rather than on the nature of the activities occurring on the property, Wisconsin courts focus on how the property is used by the occupants, not how the property is used by the owners.

III

¶60 In sum, because the lead opinion errs at the outset by concluding that the term "commercial activity" is ambiguous, it embarks down the wrong analytical path, leaving many questions unanswered.

¶61 I concur with the mandate of the court, but I write separately to set forth the correct legal analysis that the court would have otherwise had to engage in but for its mistaken conclusion that the term "commercial activity" is ambiguous.

10

¶62 DANIEL KELLY, J. *(concurring).* "There shall be no commercial activity allowed on any of said lots." Sentences become unnecessarily convoluted when they speak in the passive voice through split verb phrases, as this one does. Fortunately, neither of these foibles is, strictly speaking, ungrammatical.[1] And that means the quoted sentence will show us its plain meaning if we just apply a little grammatical elbow-grease.

¶63 We start, as would all good grade-school students, with identifying the sentence's subject. Unfortunately, authors make this first step more difficult when they use the passive voice. Such a formulation allows them to hide the actor (the sentence's grammatical subject) by replacing it with what would have been the sentence's grammatical object if they had written the sentence in the active voice. To identify the subject of this sentence, we first must rearrange it into its active-voice form so we can find the grammatical object. Thus rearranged, the restrictive covenant would read: "Lot owners[2] shall allow no commercial activity on any of said lots." The verb phrase in this formulation is "shall allow," which makes "commercial

---

[1] We do, however, generally frown on them for their obscurantism.

[2] "Lot owners" were the hidden actors of the restrictive covenant. Because they were hidden, identifying them requires a little speculation. But only a little. Lot owners, of course, are the only ones realistically capable of allowing commercial activity on the lots, so it's a pretty safe guess that they are the ones to whom the covenant applies.

activity" the verb's direct object.[3] The passive voice transformation, therefore, moved "commercial activity" to the subject slot.

¶64 The passive voice not only swaps the sentence's subject and object, it also transforms the verb phrase ("shall allow") by adding the verb "to be" while simultaneously putting the existing verb into the past tense. Here, the author placed the sentence's subject (commercial activity) in the middle of the verb phrase, which made it read as follows: "shall be no commercial activity allowed." But after setting aside the sentence's subject (commercial activity) for a moment, the verb phrase easily resolves to "shall be allowed."

¶65 Now that we have accounted for the subject and verb phrase, we may readily identify the remainder of the sentence as a simple, but critical, prepositional phrase: "on any of said lots." Prepositional phrases come in two varieties—adjectival and adverbial. As the names imply, they provide additional information about either a noun or a verb. Here, the prepositional phrase is adjectival because the preposition provides identifying information about the noun phrase "commercial activity." That is to say, the prepositional phrase tells us the sentence does not apply to all "commercial activity," but only to "commercial activity" as further

---

[3] "[N]o," as it appears immediately before the direct object, is simply a word of negation. Grammatically, an author may accomplish the negation either by using "no" in conjunction with the object to be negated, or "not" in conjunction with the verb. The meanings are equivalent.

described by the prepositional phrase. The preposition——"on"—— is locational, which tells us the sentence's subject is not allowed only when it occurs where identified by the prepositional phrase.

¶66 When we stitch all of this together, the restrictive covenant says that no "commercial activity" (the subject) "shall be allowed" (the verb) "on any of said lots" (the adjectival prepositional phrase). The covenant does not prohibit all commercial activity, but only so much of it that takes place "on any of said lots." It says nothing about what may be done "with" the property, or "to" the property, but only what may be done "on" the property. That is to say, the covenant's restriction is locational.

*

¶67 This grammatical exercise makes the restrictive covenant really quite easy to understand. It also unequivocally prevents the covenant from saying what the Forshees want it to say. The Forshees assert that the Neuschwanders engage in commercial activity when they rent their property (the "Property"), something they believe the restrictive covenant expressly forbids. But they can make the covenant say this only if they ignore either the nature of the activity taking place on the Property, or the prepositional phrase.

¶68 Because the restrictive covenant is a location-specific prohibition of commercial activity, our application of its language must begin with surveying what is happening on the Property. As the court's opinion aptly describes, renters

3

"sleep, cook, eat, and recreate in their preferred manner" on the Property. Majority op., ¶8. If this is the "renting" about which the Forshees complain, then substituting that activity into the covenant should produce a meaning that is satisfactory to them. Here is how it would read: "There shall be no sleeping, cooking, eating, or recreating ~~commercial activity~~ allowed on any of said lots." If the Forshees stopped a renter in the middle of his meal to ask him what he was doing, he would not say he was renting. He would say he was eating. And if the renter had the temerity to stop the Forshees in the middle of their meal to ask what they were doing, they would not say they were owning. The renters obtained the right to sleep, cook, eat, and recreate on the Property through the rental transaction, but "renting" does not describe what they do on the Property. We could not read the restrictive covenant this way without disastrous, unintended consequences. If we were to conclude that what the renters do on the Property comprises "commercial activity," then the Neuschwanders' neighbors had best pack their bags because the owners and renters are doing the same thing.

¶69 Even though the covenant's restrictions only apply to what occurs "on any of said lots," the Forshees are not actually interested in what happens there. They are quite adamant, in fact, that "[w]hat the customers do while on the property is irrelevant." Instead, they say, it is the Neuschwanders' act of renting the Property that violates the covenant. If that is what the covenant prohibits, plugging that activity into the

4

restrictive covenant should produce the meaning favored by the Forshees. That substitution would have the covenant read, "There shall be no renting of the Property ~~commercial activity~~ allowed on any of said lots." "Renting of the Property," of course, simply refers to the transaction by which one obtains the right to use the Property for a defined period of time, just as purchasing the Property refers to the transaction by which one obtains ownership of the Property.

¶70 So if the Forshees are right——that "renting" is a commercial activity to which the covenant refers——then the covenant would merely prohibit the rental transaction from taking place on the Property. That, of course, is not what they want the covenant to say. But it could say that if we ignored the prepositional phrase. The Forshees' desired effect would obtain if we further modified the covenant to say, "There shall be no renting of the Property allowed ~~on any of said lots~~." But that would make surplusage of the prepositional phrase, which we avoid whenever possible. See Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶45, 326 Wis. 2d 300, 786 N.W.2d 15 ("When possible, contract language should be construed to give meaning to every word, 'avoiding constructions which render portions of a contract meaningless, inexplicable or mere surplusage.'" (quoted source omitted)).

¶71 The restrictive covenant's plain meaning simply does not say what the Forshees want it to say. No grammatical reading of the covenant could prevent the Neuschwanders from renting their property——so long as the renters do not engage in

5

"commercial activity" while residing there. The Forshees do not appear to be claiming that activities like sleeping, cooking, eating, and recreating are commercial in nature. Nor could they——if such activity is commercial, the Forshees could no more engage in it than the renters.

¶72 After applying a few rules of grammar to the restrictive covenant, the sentence disclosed more than enough of its plain meaning to resolve this case. Instead of employing this grammatical analysis, the court sought a comprehensive definition of "commercial activity." When it was unable to discover one, it declared the phrase ambiguous, and used a rule of construction to resolve the covenant's language against the Forshees. If we should find our covenant construction efforts in extremis, we certainly may have resort to this lifeline. We shouldn't grab for it, however, unless we really are in extremis. We weren't, and we could have (and should have) stated the covenant's meaning without it. Therefore, I respectfully concur and join the majority except to the extent it is inconsistent with this concurrence.

¶73 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

6

¶74 ANN WALSH BRADLEY, J. *(dissenting).* The restrictive covenant at issue provides, "There shall be no commercial activity allowed on any of said lots." Although the application of the phrase "commercial activity" in some contexts may render the statute ambiguous, it is not ambiguous here.

¶75 The Neuschwanders purchased the property in 2014, renovated it, and have primarily rented it out to vacationers. Lead op., ¶6. In 2015, the Neuschwanders received $55,784.93 in rent including taxes and paid $4,973.81 in room tax to the City of Hayward.

¶76 To run such a lucrative enterprise is, in my view, plainly "commercial activity." It relates to commerce and has profit as its chief aim. Accordingly, I reach a conclusion contrary to the lead opinion[1] and respectfully dissent.

---

[1] I use the term "lead" opinion for two reasons. First, I am concerned that without this cue, the reader may mistakenly believe that the lead opinion has any precedential value. Although six justices join in the mandate of the opinion to affirm the court of appeals (Roggensack, C.J., joined by Abrahamson, J., Ziegler, J., Gableman, J., Rebecca Grassl Bradley, J., and Kelly, J.), it represents the reasoning of only three justices (Roggensack, C.J., joined by Ziegler, J., and Gableman, J.). Justices Abrahamson, Rebecca Grassl Bradley and Kelly joined in the mandate, but they would rely on contrary reasoning.

Although set forth in three separate opinions, four justices disagree with the reasoning of the lead opinion. Contrary to the lead opinion, four justices determine that the restrictive covenant is unambiguous (Abrahamson, J., Ann Walsh Bradley, J., Rebecca Grassl Bradley, J., and Kelly, J.).

(continued)

1

I

¶77 The lead opinion concludes that the term "commercial activity" as used in the restrictive covenant is ambiguous. Lead op., ¶¶21-22. It therefore construes the words in favor of the property owners' ability to use their property freely. Id., ¶26. Accordingly, in the lead opinion's view, the restrictive covenant does not prohibit any short-term or long-term rentals of the Neuschwanders' property. Id., ¶28.

¶78 A restrictive covenant will be enforced if the intention of the parties is clearly shown in the covenant. Voyager Vill. Prop. Owners Ass'n v. Johnson, 97 Wis. 2d 747, 749, 295 N.W.2d 14 (Ct. App. 1980). Intent does not refer to the subjective intent of the drafter, but to the scope and purpose of the covenant as manifest by the language used. Zinda v. Krause, 191 Wis. 2d 154, 166, 528 N.W.2d 55 (Ct. App. 1995).

¶79 Further construction of a covenant is only necessary when it is ambiguous. Voyager Village, 97 Wis. 2d at 749. In interpreting the language of a restrictive covenant, we apply the plain and ordinary meaning of the words. See Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶28, 348 Wis. 2d 631, 833

_____

Second, I use the term "lead" opinion because although it is undefined in our Internal Operating Procedures, its use here is consistent with past description. We have said "that a lead opinion is one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices." State v. Lynch, 2016 WI 66, ¶143, 371 Wis.2d 1, 885 N.W.2d 89 (Abrahamson & Ann Walsh Bradley, JJ., concurring in part, dissenting in part) (citing Hoffer Props., LLC v. State, Dep't of Transp., 2016 WI 5, 366 Wis.2d 372, 874 N.W.2d 533).

2

N.W.2d 586; Solowicz v. Forward Geneva Nat'l., LLC, 2010 WI 20, ¶34, 323 Wis. 2d 556, 780 N.W.2d 111 (explaining that ordinary contract rules apply to interpreting the terms of a restrictive covenant).

¶80 "Commercial activity" is susceptible to a clear definition. As the lead opinion does, I turn to the dictionary for assistance. The dictionary includes as definitions of "commercial" the rather obvious "[o]f or relating to commerce" and the more incisive "[h]aving profit as a chief aim." American Heritage Dictionary 380 (3d ed. 1992). I accept the plain meaning of these words, and therefore determine that the covenant is unambiguous.

¶81 Applying the restrictive covenant's unambiguous language to the specific activity in this case, I conclude that the short-term vacation rental activity here is prohibited. The record in this case indicates that the Neuschwanders profited handsomely from the rental of their house. They further paid substantial room tax to the City of Hayward and have held the property out as a lodge available for rent in advertisements.

¶82 A profit motive was the entire basis of the relationship. The Neuschwanders did not operate the property as a single or two family dwelling. It was advertised to sleep up to 15 people with a maximum of eight cars, regardless of the family relationship. Instead, they conducted a short term transient lodging business and used the property as part of that business enterprise. Both the Neuschwanders and their renters engaged in this enterprise. The very presence of the renters on

3

the property is the result of a commercial exchange. Absent payment, renters would not be able to engage in any activities on the property, such as eating, sleeping, and recreating.

¶83 Additionally, the Neuschwanders acquired the property in the first instance through a 1031 tax exchange. See 26 U.S.C. § 1031. A 1031 tax exchange is a process by which certain properties may be exchanged without the I.R.S. recognizing a gain or loss. See id. The catch is that the property exchanged must be "held for productive use in a trade or business or for investment." Id. By seeking the tax advantage that accompanies a 1031 exchange, the Neuschwanders tacitly acknowledge that the property is used for "business," or in other words, "commercial activity."

II

¶84 Although I conclude that the Neuschwanders' rental of their property is circumscribed by this restrictive covenant because their activity relates to commerce and has profit as its chief aim, I do not reach my conclusion without pause.

¶85 As the lead opinion observes, the breadth of the restrictive covenant at issue raises concern. See lead op., ¶22. It could be read to proscribe selling homemade crafts, writing a blog post for compensation, or keeping any kind of home office. On the other hand, it also could be that these activities would be considered de minimus or "incidental to

4

their occupation of the premises as their single family residence."[2] But these facts are not before us.

¶86 Although some activities may be close calls as to whether they constitute "commercial activity," the Neuschwanders' vacation rental is not a close call. The language of the covenant is unambiguous and its application to the Neuschwanders does not render an absurd result.

¶87 The breadth of the restrictive covenant, however, is not the only concern. So, too, is the apparent breadth of the lead opinion's holding. Its interpretation of "commercial activity" has ramifications well beyond the facts of this case. Likely there are a myriad of restrictive covenants that use the same or a similar phrase. Are all of those now void? The lead opinion seems to provide a blanket statement favoring the property owner's rights over the rights of others. Yet, it supports its conclusion with only a truncated analysis that does not consider the larger context in which it fits.

¶88 The breadth of the lead opinion's holding stands in contrast to the dearth of its analysis. Without sufficient explanation, the lead opinion extols the property rights of the

---

[2] See Bubolz v. Dane Cty., 159 Wis. 2d 284, 295-96, 464 N.W.2d 67 (Ct. App. 1990) (injunction against violation of restrictive covenant did not prohibit a residents from engaging in business activities that are "incidental to their occupation of the premises as their single family residence."); see also Joyce v. Conway, 7 Wis. 2d 247, 251, 96 N.W.2d 530 (1959) (explaining that acquiescence to past violations does not deprive affected property owners of the right to enforce later violations of a restrictive covenant).

5

Neuschwanders at the expense of other rights and other property owners.

¶89 Pivotal to the lead opinion's analysis is its premise that "[p]ublic policy of the state of Wisconsin 'favors the free and unrestricted use of property.'" Lead op., ¶16 (quoting Crowley v. Knapp, 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980)). But what about the public policy of this state that favors freedom to contract? Because of the import of freedom to contract, courts in the past have supported the right of property owners to create and enforce covenants affecting their own property. See Solowicz, 323 Wis. 2d 556, ¶¶34-35. Which right should prevail under these circumstances and why? The lead opinion does not explain.

¶90 Likewise, the lead opinion fails to explain why the property right of the Neuschwanders should prevail over the property rights of their neighbors. Concerns have arisen regarding traffic, noise, and other disturbances. Here the property is comprised of a house located on 2.2 acres. What about the rights of those where the rental is not so distant, but rather the front doors are separated by only a few feet? The lead opinion is silent.

¶91 Although espousing to be written narrowly,[3] the lead opinion instead appears to write large, without consideration or analysis of the competing rights and implications of its decision. This is particularly problematic because the rapid

---

[3] See lead op., ¶3.

development of the short-term rental industry appears to have outpaced the development of the law.[4] State and local legislative bodies[5] as well as courts[6] have only recently been grappling with the weighty issues that attend to this enterprise.

¶92 Some courts addressing issues akin to that which we address today employ an analysis and reach a conclusion similar to that set forth in this dissent. See Eager v. Peasley, __ N.W.2d __, 322 Mich. App. 174 (Mich. Ct. App. 2017); Vonderhaar

---

[4] See, e.g., Fruchter v. Zoning Bd. of Appeals of Town of Hurley, 133 A.D.3d 1174, 1175 (N.Y. App. Div. 2015) ("The Town Code does not appear to have been updated to consider the ramifications from the emergence of the so-called 'sharing economy,' which includes the type of house sharing or short-term rentals recently made popular by various platforms on the Internet . . . .").

[5] See 2017 Wis. Act 59, §§ 985L, 985r (creating Wis. Stat. § 66.0615(1)(bs) and (5)); Wis. Stat. § 66.0615(5) (requiring "lodging marketplaces" to register with the department of revenue, and to collect sales and use tax, as well as room tax, if applicable); see also Wis. Stat. § 66.0615(1)(bs) (defining "lodging marketplace" as "an entity that provides a platform through which an unaffiliated 3rd party offers to rent a short-term rental to an occupant and collects the consideration for the rental from the occupant."); see also Vanessa Katz, Regulating the Sharing Economy, 30 Berkeley Tech. L.J. 1067 (2015).

[6] As an example, the Pennsylvania Supreme Court recently accepted review of Slice of Life, LLC v. Hamilton Twp. Zoning Bd., 164 A.3d 633 (Pa. Commw. Ct. 2017), review granted 180 A.3d 367 (Pa. 2018). There, the question to be addressed is set forth as: "Whether the Commonwealth Court disregarded the binding precedent of this Court, set forth in the case Albert v. Zoning Hearing Bd. of North Abington Twp., 578 Pa. 439, 854 A.2d 401 (2004), by finding that the purely transient use of a property as part of a commercial short-term vacation rental business was a permitted use in a residential zoning district?"

v. Lakeside Place Homeowners Ass'n, Inc., No. 1021-CA-002193-MR, unpublished slip op. (Ky. Ct. App. Aug. 8, 2014). Others embrace a contrary path and conclusion. See Santa Monica Beach Prop. Owners Ass'n, Inc. v, Acord, 219 So.3d 111 (Fla. Dist. Ct. App. 2017); Wilkinson v. Chiwawa Cmtys. Ass'n, 327 P.3d 614 (Wash. 2014).

¶93 As new arguments are developed, new fact situations presented, and new legislation passed, the law will continue to evolve in this area. Restrictive covenants will be only one part of this evolution, as they intersect and overlap with the enforcement of local zoning ordinances that attempt to regulate this rapidly growing enterprise. There will inevitably be more litigation surrounding short-term rentals.

¶94 This court paints with a broad brush where a more nuanced analysis is required. Lest by the apparent breadth of its decision, the lead opinion unintentionally provides inflexible answers to questions not yet presented. A more nuanced analysis, at least recognizing the important rights it is subjugating, together with an explanation of why, may provide guidance to future courts and litigants as they grapple with the developing issues that attend this burgeoning industry.

¶95 Accordingly, for the reasons set forth above, I respectfully dissent.